George B. STREET, Appellant,

v.

Officer Leo SURDYKA, Baltimore City Police Department, et al., Appellees.

No. 73–1843.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1973.

Decided Feb. 21, 1974.

Alexander R. Martick, Baltimore, Md., for appellant.

Robert C. Verderaime, Baltimore, Md., (Verderaime & DuBois, Baltimore, Md., on brief) for appellees.

Before CRAVEN, RUSSELL and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

In the district court George B. Street sought to recover damages from a Baltimore police officer and two police cadets, alleging that they arrested him in violation of the fourth amendment. Plaintiff brought his claim under 42 U. S.C. § 1983 by analogy to the common law tort of false arrest.

While off duty on December 17, 1967, the police cadets, Andrews and Ullah, were in an automobile that nearly collided with Street's taxi in a Baltimore intersection. Street then stopped abruptly to pick up a passenger, and the cadets decided to see what was wrong and inquire if assistance was needed. When Street saw the two men approaching his cab, he pulled away from the curb and almost struck cadet Andrews. The cadets returned to their car and followed him. Andrews approached the cab once more when it stopped at a traffic light, but Street again drove away. Finally the cadets hailed Officer Surdyka's patrol car. Cadet Ullah reported the incident, and Officer Surdyka arrested Street. At the station house Officer Surdyka started to write a charge of attempted assault with a motor vehicle, but the desk sergeant objected, suggesting a charge of disorderly conduct instead. This difficulty over the charge recurred ten days later at Street's trial in Baltimore municipal court. Upon finding no evidence of disorderly conduct, the judge suggested a charge of "assault by attempting to strike with a motor vehicle." The charge was changed and Street was acquitted. Over two years later, Street filed this suit against Andrews, Ullah, and Officer Surdyka. The district judge entered summary judgment for the cadets, and a jury returned a verdict for Officer Surdyka. Plaintiff appealed both adverse judgments. We affirm.

## JURY VERDICT

In his attack on the jury verdict, Street objects to the jury instructions on Maryland law. He contends the arrest was illegal because Maryland law prohibits warrantless arrests for misdemeanors committed outside the arresting officer's presence. Under this theory of the case, Street argues that the trial judge should have directed a verdict in his favor because Officer Surdyka had him booked for disorderly conduct, a misdemeanor under Maryland law. He also disagrees with the court's instruction that attempting to strike someone with an automobile could constitute a felony in Maryland. We do not reach these questions because we decline to tie section 1983 to the technicalities of state law.

Maryland, like many other states, follows the common law rules on warrantless arrest. An officer needs no warrant to make an arrest if he has probable cause to believe a felony has been committed, but probable cause is not enough to authorize warrantless arrest for a misdemeanor. The misdemeanor must also have been committed in the officer's presence. Robinson v. State, 4 Md.App. 515, 243 A.2d 879 (1968). If Officer Surdyka violated this Maryland law, he may be liable to plaintiff in an action under the common law of false

arrest or false imprisonment.[1] But section 1983 does not provide a remedy for common law torts. Instead it creates a federal cause of action against those acting under color of state law who cause a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. In many cases the same conduct will violate both state law and the federal Constitution, but certainly not all violations of state law rise to the level of constitutional tort. *See* Ouzts v. Maryland National Insurance Co., 470 F.2d 790 (9th Cir. 1972); *cf.* Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). In Ralph v. Pepersack, 335 F.2d 128 (4th Cir. 1964), cert. denied, 380 U.S. 925, 85 S.Ct. 907, 13 L. Ed.2d 811 (1965), this court considered the relationship of arrest law to the Constitution. A state prisoner argued that his confession should be inadmissible because it resulted from a possibly illegal arrest for "investigation" in the District of Columbia. Affirming a denial of habeas corpus, the court said:

> There is significant distinction between police action which is unlawful because violative of constitutional provisions and police action which merely fails to accord with statute, rule or some other nonconstitutional mandate. The protection against arrest without probable cause, as well as that against unreasonable searches and seizures, stems directly from the Fourth Amendment. There is no such constitutional prohibition against arrests for investigation where probable cause exists. Certainly not every official impropriety gives rise to a finding that due process has been denied.

*Id.* at 136. In Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), the Supreme Court construed the reach of the "under color of law" formula that appears in section 1983 and the criminal statute now codified as 18 U.S.C. § 242. Justice Douglas wrote:

> But there is no warrant for treating the question in state law terms. The problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under "color of any law."

*Id.* at 108, 65 S.Ct. at 1038. We believe this statement is equally applicable to plaintiff's attempt to use Maryland law in this case. Even if Officer Surdyka violated Maryland arrest law, he cannot be liable under section 1983 unless he also violated the federal constitutional law governing warrantless arrests.

■ The constitutional restrictions on arrest are derived from the fourth amendment's prohibition of unreasonable seizures. Because the Supreme Court has interpreted the fourth amendment in light of the law that existed when the Bill of Rights was adopted, *see, e. g.,* Carroll v. United States, 267 U.S. 132, 149–151, 45 S.Ct. 280, 69 L.Ed. 543 (1925), it might be argued that the fourth amendment incorporates the common law's restrictions on warrantless arrests for misdemeanors. But the Supreme Court has never given constitutional force to this element of the common law rule.[2] In Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900), the Court applied the common law rule but hinted that its restrictions could be relaxed by statute. Subsequent cases have focused entirely on the requirement of probable cause. *See* Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Henry

---

1. Although plaintiff's brief alludes to a state law claim for false arrest and false imprisonment, he did not plead a pendent cause of action under state law, and the case was submitted to the jury under section 1983 alone.

2. The Supreme Court applied the common law arrest rule in Carroll v. United States,

267 U.S. 132, 156–160, 45 S.Ct. 280, 69 L. Ed. 543 (1925), Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900), and Kurtz v. Moffitt, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458 (1885), but none of these cases established constitutional doctrine.

v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).[3] We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence. The difference between felonies and misdemeanors is no longer as significant as it was at common law. *See* Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[4] Maryland courts have criticized the continued use of the common law rule as impractical and illogical, and have invited the state legislature to adopt new rules. Robinson v. State, 4 Md.App. 515, 243 A.2d 879 (1968).[5] Classifications based on other criteria could be both rational and practical. For example, Congress has authorized warrantless arrests upon probable cause for any violation of the federal laws pertaining to narcotics or marihuana. 26 U.S.C. § 7607.[6] We are most reluctant to adopt a constitutional interpretation that would impede reform in this area. The fourth amendment protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed. The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right.[7] Accordingly, there is no cause of action for "false arrest" under section

3. The United States Reports contain two remarks to the effect that the common law rule of arrest states the constitutional standard. Coolidge v. New Hampshire, 403 U.S. 443, 511 n. 1, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (White, J., concurring and dissenting) ; Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). In both cases it is clear from the context that mention of the Constitution relates to the requirement of probable cause rather than to the restriction on misdemeanor arrests. The offenses in both cases were felonies. The opinion in *Henry* is devoted entirely to developing a definition of probable cause. Mr. Justice White's contention in *Coolidge* is that the Court's holding is even more restrictive than the common law rule, because it "suggests that warrantless, probable-cause arrests may not be made in the home absent exigent circumstances." 403 U.S. at 512 n. 1, 91 S.Ct. at 2061.

4. For example, at English common law, conviction for a felony occasioned "total forfeiture of the offender's lands or goods or both." Kurtz v. Moffitt, 115 U.S. 487, 499, 6 S.Ct. 148, 152, 29 L.Ed. 458 (1885).

5. In *Robinson* the Maryland Court of Appeals wrote :

It is clear that the common law differentiation between felonies and misdemeanors is not practical in application today. Nor can the Maryland system of differentiation be logically supported. In many instances there is no correlation between the designation of the offense as a felony or misdemeanor and the seriousness of the crime or the severity of the punishment permitted. . . . [P]eace officers in Maryland frequently find themselves under a handicap due to the unusual distinctions between felonies and misdemeanors.

243 A.2d at 884–885.

6. For some time 26 U.S.C. § 7607 has authorized warrantless arrests for all narcotics law violations, but until recently all federal narcotics violations were felonies. Act of July 18, 1956, ch. 629, § 103, 70 Stat. 568, repealed, Act of Oct. 27, 1970, Pub.L. No. 91–513, § 1101(b)(4)(A), 84 Stat. 1292. In the Comprehensive Drug Abuse Prevention and Control Act of 1970, Congress created a class of civil offenses and misdemeanors. *See* 21 U.S.C. § 872. Consequently, federal customs officers may now make warrantless arrests for narcotics misdemeanors on probable cause. *See also* United States v. Grosso, 225 F.Supp. 161, 168–170 (W.D.Pa.1964) (Pennsylvania statute authorizing warrantless arrests for misdemeanor offenses involving "gaming devices" is constitutional).

7. This conclusion is not undermined by occasional references to state law in cases challenging the validity of state arrests. In Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), four members of the Court posited that a California statute would govern the validity of a California arrest, but they evaluated the arrest under federal standards as well. Moreover, the cases they cited to support the use of state law involved the validity of federal arrests in the absence of federal statutory standards. The use of state law in such cases seems clearly to be based on nonconstitutional considerations. *See* United States v. Di Re, 332 U.S. 581, 587–591, 68 S.Ct. 222, 92 L.Ed. 210 (1948) ; Lathers v. United States, 396 F.2d 524 (5th Cir. 1968). Nor have prior cases in the Fourth Circuit held that violation of state law renders an arrest unconstitutional. United States v. Gearhart, 326 F.2d 412 (4th Cir. 1968), was a federal prosecution based on evidence seized by state officers. And in Shorey v. Warden, 401 F.2d 474 (4th Cir.), cert. denied, 393

1983 unless the arresting officer lacked probable cause.

██ In this case the trial judge instructed the jury that Officer Surdyka would have violated plaintiff's constitutional rights if he lacked "probable cause to believe that a misdemeanor was being committed in his presence or that a felony had been committed." Although this instruction erroneously gave Street the benefit of the common law restriction on misdemeanor arrests, he cannot complain of an error that operated in his favor.

Plaintiff also objects to the admission of evidence tending to show that Officer Surdyka had grounds to believe that Street had attempted to strike Andrews with a motor vehicle. Street contends that since he was charged with disorderly conduct the court should not have considered another basis for arrest. Our decision on the main issue disposes of this argument as well, since the specific charge against Street would have significance only if we pegged his constitutional rights to the misdemeanor arrest rule. *Cf. Lawton v. Dacey*, 352 F.2d 61 (1st Cir. 1965).

Finally, plaintiff insists that the judge erred in instructing the jury that "mere negligence" could not sustain the civil rights claim, and requiring instead a finding that Officer Surdyka acted "intentionally *or* with reckless, gross, and culpable negligence." (Emphasis added). We disagree. In Jenkins v.

Averett, 424 F.2d 1228 (4th Cir. 1970), we held that "gross and culpable negligence" could support a section 1983 action against a policeman who recklessly wounded the plaintiff, but we took pains to note that the plaintiff's claim did not involve "simple negligence or inadvertence." *Id.* at 1232. The instruction given in this case was thus substantially in line with the language of *Jenkins.*

██ Here, however, the instruction went beyond our holding in *Jenkins.* There we used the gross and culpable negligence standard to establish the deprivation of a constitutional right. Construing the plaintiff's claim as a suit for arbitrary interference by police, we held that gross and culpable negligence was the functional equivalent of arbitrariness.[8] Then, without deciding whether there is an independent requirement of intent in section 1983 actions, we noted that if there were such a requirement, gross and culpable negligence would satisfy it. Here the district judge added just such an intent requirement to the plaintiff's burden of proving that the defendant had deprived him of a constitutional right. He instructed the jury:

If you should find that the Defendant arrested Plaintiff illegally under the applicable law described, and thus deprived the Plaintiff of his Constitutional rights, it is necessary that you further consider Defendant's state of mind. Mere negligence is not suffi-

U.S. 915, 89 S.Ct. 241, 21 L.Ed.2d 201 (1968), and Morris v. Boles, 386 F.2d 395 (4th Cir. 1967), cert. denied, 390 U.S. 1043, 88 S.Ct. 1640, 20 L.Ed.2d 304 (1968), the court discussed state law but actually applied a federal constitutional standard. Moreover, *Gearhart, Shorey,* and *Morris* all concerned searches incident to arrests. There may be a difference between using state law to determine the constitutionality of an arrest under section 1983 and using it to evaluate an arrest for the purposes of the incident search doctrine. In the latter instance, the state seeks to validate an otherwise unconstitutional *search* by tying it to a valid arrest. It may be that an arrest, though constitutional under federal stand-

ards, cannot serve as the basis for an incident search if it is illegal under state law. *Cf.* Ralph v. Pepersack, 335 F.2d 128, 135 (4th Cir. 1964), cert. denied, 380 U.S. 925, 85 S.Ct. 907, 13 L.Ed.2d 811 (1965).

8. There is, of course, no similar need to use a negligence concept to fill out the contours of the right to be free from unconstitutional arrests. In a case like this one, the plaintiff establishes the deprivation of a constitutional right by showing that the arrest was not based upon probable cause. Then the officers may defend by showing their good faith and reasonable belief in the validity of the arrest. Hill v. Rowland, 474 F.2d 1374 (4th Cir. 1973).

cient to sustain the claim under the Civil Rights Act. Defendant's activity must have been intentional or reckless, characterized by gross or culpable negligence.

We doubt that this independent state of mind requirement is appropriate in a suit based on unconstitutional arrest. In a case decided after *Jenkins* we held that officers may defend such actions by showing good faith and reasonable belief in the validity of the arrest. Hill v. Rowland, 474 F.2d 1374 (4th Cir. 1973). This defense, though conceptually different from an independent requirement of intent, serves essentially the same function. Both measure the defendant's state of mind. And in arrest cases, both standards guard against the chance that a policeman will suffer liability for a good-faith mistake in applying the technical rules of probable cause. Because the Hill v. Rowland defense is tailored to serve this purpose, we prefer it over the more general standard employed below.

■ In this case, however, the district judge gave both the negligence instruction and an instruction on the Hill v. Rowland defense. Because he charged the jury that Officer Surdyka would not be liable if he acted in good faith and upon probable cause,[9] use of the negligence instruction, though inappropriate, was not reversible error.

## SUMMARY JUDGMENT

■ It is considerably more difficult to affirm the summary judgment entered for the cadets. If the motion for summary judgment was granted on the ground that the cadets were not acting under color of state law,[10] we think it was error. The evidence before the trial judge tended to show that the cadets could have been acting under state authority. Andrews and Ullah were paid employees of the Baltimore Police Department. They participated in Street's arrest and accompanied him and Officer Surdyka to the police station for booking, discussed the charging decision with the desk officer, and subsequently gave their superior officer a written report of the incident. They apparently did everything except perform the actual arrest, and it is not clear that they lacked authority to do that. If we accept their contention that they had no arrest authority, it still does not follow that they could not have been acting under color of state law. Even private citizens can take on the color of state law when they participate in police action or when the state sanctions their exercise of police authority. Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); Scott v. Vandiver, 476 F.2d 238 (4th Cir. 1973); Potts v. Wright, 357 F.Supp. 215, 218–219 (E.D. Pa.1973).

■ Generally, summary judgment can be affirmed on appeal only if the evidence available to the trial judge at the time he ruled on the motion established that there was no genuine issue of material fact. Poller v. CBS, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Fed.R.Civ.P. 56(c); 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716 (1973). This case is extraordinary, however, in that the facts material to the cadets' liability were fully developed in the subsequent

9. The instruction used below was worded in terms of "probable cause" instead of the "reasonable belief" language we used in Hill v. Rowland. The difference in the two standards is significant, but the Hill v. Rowland formula is more favorable to policemen than the standard used here. It follows, therefore, that use of the "probable cause" standard does not furnish grounds for setting aside the verdict rendered for Officer Surdyka.

10. The district judge did not assign any reasons for his decision to enter summary judgment. The defendants' motion is ambiguous, asserting simply that the cadets "did not make any arrest," but the memorandum filed in support of the motion argues primarily that they were not acting under color of state law.

trial against Officer Surdyka. Street described the entire sequence of his encounters with the cadets, and both cadets testified to the chain of events that led to Street's arrest. The uncontroverted facts in the record establish that Street was not entitled to recover damages from the cadets. The jury verdict absolved Officer Surdyka from liability on the same set of facts. The only issue that could lead to a different result between different officers participating in a single arrest is the individual officer's good faith and reasonable belief in the validity of the arrest. Nothing in this record suggests that the cadets acted in bad faith. The most unfavorable testimony on this issue is Street's allegation that he thought they were eager to act like policemen. But even Street's testimony supports their belief that he had almost run over Andrews. He agreed with the cadets' testimony that he had almost collided with their car in the intersection, and that he pulled out from the curb as the cadets came toward his cab. He denied, of course, that he intended to run over them, and he and the cadets disagreed over how close he came to striking Andrews. But even his version shows that the cadets were quite reasonable in their belief that he had tried to strike them. Obviously it is the better practice to submit issues of good faith and reasonable belief to a jury. That it was not done here is regrettable because the identical question was submitted with respect to Officer Surdyka, and the jury trial would have scarcely been extended by submission of Street's case against the cadets. We stop short of holding that Street is collaterally estopped by the jury verdict in favor of Officer Surdyka. Instead the basis of our decision is that the uncontroverted evidence in the record at the time of entry of summary judgment, as embellished and explained by Street's subsequent testimony, convinces us that Street is not entitled to recovery and that a remand for trial against the cadets would be to no avail.

Affirmed.