Angela SCHMIDT, Plaintiff,

v.

CITY OF LOCKPORT, ILLINOIS, Shanna Preikschat, Officer Wrona, and Anthony Konidaris, Defendants.

No. 98 C 5038.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 14, 1999.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for plaintiff.

William W. Kurnik, Michelle Jeanette Hirsch, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for City of Lockport, Illinois, defendant.

Eric L. Samore, Joseph Patrick Kniery, Morfia J. Komotos, O'Hagan, Smith & Amundsen, L.L.C., Chicago, IL, for Anthony Konidaris, defendant.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Angela Schmidt has filed a six-count complaint against defendants City of

Lockport, Illinois ("Lockport"), Officer Donald Wrona ("Wrona"), Officer Shanna Preikschat ("Preikschat"), and Anthony Konidaris ("Konidaris"), owner of Anthony's Pancake House in Lockport. Plaintiff alleges that: (1) Lockport's municipal arrest policy is unconstitutional (Count II); (2) defendant Preikschat strip-searched plaintiff in violation of her Fourth Amendment rights (Count I); and (3) defendant Wrona arrested plaintiff without probable cause (Count III). Plaintiff also brings supplemental state law claims against defendant Konidaris, alleging: (1) that he was negligent in preparing a salad (Count IV); (2) false arrest (Count V); and (3) malicious prosecution (Count VI). Defendants move for summary judgment on Counts I, II, IV, V, and VI. For the following reasons, defendants' motions are granted in part and denied in part.

## FACTS[1]

On May 27, 1997, plaintiff was eating lunch at Anthony's Pancake House when she bit down suddenly on a foreign object, chipping her tooth. Plaintiff told the waitress about the situation and went to the restroom to investigate the damage to her tooth. When she returned to the table, the waitress informed her that she had taken the salad back to the kitchen, that it had been inspected for the alleged foreign object, and that no such object had been found. Plaintiff and Konidaris, the owner of the Pancake House, got into a verbal altercation, during which plaintiff swore at Konidaris and stormed out of the restaurant. Both plaintiff and Konidaris called the police. Plaintiff attempted to re-enter the restaurant, but was denied re-entry.

Soon thereafter, City of Lockport Police Officers Wrona and Kruizenga arrived on the scene. The officers spoke to several witnesses, and Konidaris told Wrona that he wanted to sign a criminal complaint against plaintiff because she had been "yelling and screaming" and had threatened his wife. Wrona told Konidaris that yelling and screaming in a restaurant constituted disorderly conduct. Wrona placed plaintiff under arrest for disorderly conduct in violation of City of Lockport ordinance § 130.03, and told Konidaris that he would be notified of plaintiff's court date.

Once at the station, Wrona informed plaintiff that she would have to be searched. At first plaintiff refused to undergo a search, but she reluctantly agreed to be searched after Wrona told her that he would charge her with a state crime if she continued to resist. Wrona asked Officer Preikschat to conduct the search, and Preikschat took plaintiff into an adjacent room.

Preikschat asked plaintiff to lean forward against some lockers, unrolled the collar and sleeves of plaintiff's sweater, and inspected her hair. Plaintiff states in her deposition that Preikschat then proceeded to place her hands under plaintiff's sweater and to feel over plaintiff's breasts (which were unsupported by a bra) with the palms of her hands. According to plaintiff, Preikschat next put her hands inside the elastic waistband of plaintiff's pants, and used both hands to feel along plaintiff's buttocks and genital area, and along her legs. It is unclear from plaintiff's deposition testimony whether she claims that the search occurred inside or outside her pants, although plaintiff testifies that Preikschat did not place her hands in plaintiff's underwear and did not ask plaintiff to remove her pants.

Defendants state that for the purposes of this motion, they accept plaintiff's version of the search as true. Preikschat testified in her deposition, however, that she has never placed her hands inside an arrestee's clothing while conducting a search, that her hands remained outside plaintiff's sweater at all times, and that she did not search plaintiff's vaginal area.

After the search, plaintiff was released on bond. The state's case against plaintiff

1. The facts are undisputed unless otherwise noted.

went to trial on November 13, 1997. After Konidaris and a number of other witnesses testified, the trial judge acquitted plaintiff of disorderly conduct, concluding that there was no evidence that plaintiff had been disturbing someone in the general public, and that the dispute was merely an argument between owner and patron.

## DISCUSSION

### 1. Illegal Seizure (Count II)

In Count II, plaintiff alleges that she was subject to an illegal seizure in violation of § 1983. According to plaintiff, Lockport's arrest policy violates the Fourth Amendment because it allowed Wrona to effect a warrantless arrest for a misdemeanor even though he was not present when the alleged offense occurred. The challenged municipal policy resembles Illinois's law, which states, "A peace officer may arrest a person when ... [h]e has a warrant commanding that such person be arrested; or ... [h]e has reasonable grounds to believe that the person is committing or has committed an offense." 725 ILCS 5/107–2(1)(c).

Plaintiff notes that the Supreme Court has stated that, "[in] determining whether a particular government action violates [the Fourth Amendment], we inquire first whether the action was regarded as an unlawful search or seizure under the common law when the amendment was framed." *Wyoming v. Houghton,* —— U.S. ——, ——, 119 S.Ct. 1297, 1300, 143 L.Ed.2d 408 (1999). The common law when the amendment was framed forbade warrantless arrests for misdemeanors not occurring in the presence of an officer. *See John Bad Elk v. United States,* 177 U.S. 529, 534, 20 S.Ct. 729, 44 L.Ed. 874

(1900) ("[A]n officer, at common law, was not authorized to make an arrest without a warrant, for a mere misdemeanor not committed in his presence."); *see also United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) ("The cases construing the Fourth Amendment thus reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable ground for making the arrest.").

Defendants contend that plaintiff's claim is foreclosed by *Ricci v. Arlington Heights,* 116 F.3d 288 (7th Cir.1997). In *Ricci,* however, the Seventh Circuit found that "[t]he arrest in the instant case comports with the common law rule" because "Ricci committed the offense in the officers' presence." *Id.* at 291. Moreover, the plaintiff in *Ricci* based his argument on the reasonableness clause of the Fourth Amendment, whereas plaintiff in the instant case bases her argument on the warrant clause, a clause the *Ricci* court explicitly declined to address. *See id.* at 291–92. Because the Seventh Circuit's opinion in *Ricci* is not controlling, the court examines the relevant caselaw.

The Supreme Court has never held that an officer is constitutionally required to obtain a warrant to effect an arrest for a misdemeanor that occurred outside his presence. *See Street v. Surdyka,* 492 F.2d 368, 371 (4th Cir.1974) ("[I]t might be argued that the fourth amendment incorporates the common law's restrictions on warrantless arrests for misdemeanors. But the Supreme Court has never given constitutional force to this element of the common law rule").[2] In fact, Justice

---

**2.** Justice Marshall argued in his dissent in *Watson* that the majority in that case had essentially eviscerated the common law rule, "replacing it with the rule that the police may, consistent with the Constitution, arrest on probable cause anyone who they believe has committed any sort of crime at all. Certainly this rule would follow if the legislatures redenominated all crimes as 'felonies.' ... [T]he court surely does not intend to accord

constitutional status to a distinction that can be readily changed by legislative fiat." *Watson,* 423 U.S. 411, 454–55, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (Marshall, J., dissenting). "Given the *Watson* decision, ... it seems unlikely that the Court would now impose a warrant requirement in misdemeanor cases." 3 W. LaFave, *Search and Seizure* § 5.1(b), p. 22 (3d ed.1996).

White stated in his dissenting opinion in *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984): "The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment, and we have never held that a warrant is constitutionally required to arrest for nonfelony offenses occurring out of the officer's presence." *Id.* at 756, 104 S.Ct. 2091 (citing sources). Justice White noted that many states had increased the common law authority to arrest without a warrant. *Id.*[3]

The Seventh Circuit has never decided whether Illinois's statute, which does not adhere to the common law rule, violates the Fourth Amendment. The Seventh Circuit discussed this issue in *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir.1986), but found that the plaintiff had committed the alleged misdemeanor in the presence of the officer, and therefore concluded: "We are not authorized to decide in this case whether the statute abrogating the common law rule—without putting equivalent guarantees of reasonable conduct in its place—comports with the fourth amendment." *Id.* at 441.

Other circuit courts have discussed this issue, however. The Fourth, Fifth, Sixth, and Ninth Circuits have concluded that the rule that an officer may not make a warrantless arrest unless the misdemeanor offense occurred in his presence is a common law rule only and is not incorporated by the Constitution. *See United States v. Smith*, 73 F.3d 1414, 1416 (6th Cir.1996) ("However, this requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not mandated by the Fourth Amendment; it is merely a rule of the common law."); *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir.1991) ("The United States Constitution does not require a warrant for misdemeanors not occurring in the presence of the arresting officer.") (citing *Street*, 492 F.2d at 371–72); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir.1990) ("The requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment."); *Street*, 492 F.2d at 372 ("We do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence."); *see also Scott v. District of Columbia*, 101 F.3d 748, 754 (D.C.Cir.1996) (noting that several circuits agree that "the Fourth Amendment does not incorporate the common-law presence requirement for misdemeanor arrests, and that no cause of action exists under § 1983 unless the arresting officer lacked probable cause to believe a crime was committed," but declining to decide the issue).

▄▄▄▄ In the absence of a clear ruling by the Seventh Circuit or the Supreme Court on this issue, this court concurs with the four circuit courts that have held that the Fourth Amendment does not incorporate the common law presence requirement. This court agrees with the Fourth Circuit's rationale: "The difference between felonies and misdemeanors is no longer as significant as it was at common law.... The fourth amendment protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed. The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right." *Street*, 492 F.2d at 372. In light of the foregoing, this court concludes that the contested municipal policy does not violate the Constitution. Defendants' motion for summary judgment on Count II is therefore granted.

---

**3.** Colorado, Hawaii, Louisiana, Missouri, New York, and Wisconsin, as well as Illinois, are among the states that currently permit warrantless arrests for misdemeanors that occurred outside the officer's presence, at least in certain circumstances. *See* William A. Schroeder, *Warrantless Misdemeanor Arrests and the Fourth Amendment*, 58 Mo.L.Rev. 771, 778 n. 18 (1993). Each state's statute places either a reasonableness or a probable cause restriction on the officer's authority.

## 2. Illegal Search (Count I)

In Count I, plaintiff claims that she was subjected to an unconstitutional strip search. Defendants argue that the search in the instant case was not a strip search, but a search incident to a lawful arrest. According to defendants, the Supreme Court's decision in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), governs the instant search. In *Robinson*, the Court held that the scope of a search incident to a lawful arrest is not limited by the severity of the crime or by whether the officer believes the arrestee is harboring weapons or contraband. *See id.* at 234, 94 S.Ct. 467. Rather, the officer may conduct a "full search" regardless of her subjective beliefs about the arrestee. *Id.* at 235, 94 S.Ct. 467.[4]

Plaintiff responds that because the ordinance under which she was arrested is unconstitutional, she was not searched pursuant to a lawful arrest, and the court must therefore apply the standard articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The search plaintiff describes in her deposition certainly went beyond the bounds of a standard *Terry* frisk, which the Seventh Circuit has described as "an 'outside-the-clothes' check for concealed weapons." *Madyun v. Franzen*, 704 F.2d 954, 956–57 (7th Cir.1983) (holding that "a simple frisk or pat-down, done outside the clothing, without any deliberate attempt to examine the 'genital-anal' areas" does not constitute an unconstitutional search), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983); *Adrow v. Johnson*, 623 F.Supp. 1085, 1088 (N.D.Ill.1985). Were plaintiff correct that the search was not conducted incident to a lawful arrest, the search plaintiff describes might be patently un-

constitutional. The court has rejected plaintiff's constitutional challenge to the statute, however. Although plaintiff's arrest may nevertheless be unlawful if the arresting officer lacked probable cause, the court need not reach this issue. Even if the search was supported by a lawful arrest, the search, as described by plaintiff, was unreasonably intrusive.

■ Custodial searches incident to arrest are subject to the Fourth Amendment's reasonableness test, whereby the court must balance the invasion of privacy to which plaintiff was subjected against the government's interest in conducting the search. In *Mary Beth G.*, the Seventh Circuit applied the reasonableness test the Supreme Court announced in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), a case in which the "Court explicitly explored the scope of permissible searches incident to incarceration." *Mary Beth G.*, 723 F.2d at 1271 (discussing *Bell* ):

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. [*Bell*, 441 U.S. at 559, 99 S.Ct. 1861]

In determining whether the instant search violated the constitution, the court considers the language the Supreme Court used in *Robinson* to describe a reasonable "full search" incident to arrest. As the Seventh Circuit noted in *Mary Beth G*:

---

4. The court notes that *Robinson* applies to searches incident to lawful custodial arrests, whereas the search in the instant case was a warrantless search incident to the *detention* of a person who was (allegedly) lawfully arrested. The Seventh Circuit has explained, however, that under Supreme Court doctrine, such custodial searches " 'must still be tested by the Fourth Amendment's general proscrip-

tion against unreasonable searches and seizures.' " *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1270–71 (7th Cir.1983) (quoting *United States v. Edwards*, 415 U.S. 800, 808 n. 9, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974)). This court therefore considers whether the instant search went beyond the reasonable "full search" the Court described in *Robinson*.

In characterizing what constitutes a full search incident to arrest, the *Robinson* Court quoted with approval language from Terry that describes a reasonable search incident to arrest as one involving 'a relatively extensive exploration of the person.' The majority specifically noted that it would be willing to find unconstitutional a search that was 'extreme or patently abusive.' [*Mary Beth G*, 723 F.2d at 1270 (citations omitted) ]. The court must therefore determine whether the search plaintiff describes went beyond a "relatively extensive exploration" and entered into the realm of the "extreme or patently abusive" search.

As defendants note, the Seventh Circuit has observed that the *Robinson* Court allowed a "thorough hand search." *Id.* at 1271. The search in *Robinson*, however, was an over-the-clothing search, during which the officer reached into the arrestee's pocket. *Robinson*, 414 U.S. at 222, 94 S.Ct. 467. The search Preikschat allegedly conducted, in which she reached under plaintiff's sweater and felt her bare breasts with both hands, is far more "extreme." The instant search can also be distinguished from the search approved in *Edwards*, 415 U.S. at 804, 94 S.Ct. 1234, where the police forced the arrestee to change into jail clothing so that they could search his personal clothing. As in *Mary Beth G.*, "the intensity of such an intrusion—exchanging and searching one's clothes—is substantially less than that associated with the strip search[ ] involved here." *Mary Beth G.*, 723 F.2d at 1271.

■ Defendants argue that the search Preikschat allegedly conducted does not constitute a "strip search" because Preikschat did not ask plaintiff to remove her clothing so as to allow a visual inspection of plaintiff's breasts, genitals, or buttocks. Defendants appear to contend that a search rises to the level of a strip search only if the arrestee's private areas are subjected to visual inspection. The uninvited touching of breasts, genitals, and buttocks that allegedly occurred in the instant case strikes the court as even more intrusive than asking an arrestee to lift an item of clothing to allow a cursory visual inspection of such parts, one of the practices Judge Shadur held amounted to unconstitutional strip searching in *Doe v. Calumet City*, 754 F.Supp. 1211, 1218, 1220–21 (N.D.Ill.1990). Although defendants liken the instant case to *United States v. Brown*, 499 F.2d 829 (7th Cir. 1974), the female arrestees in *Brown* were merely asked to raise their long skirts to their knees. The plaintiffs in that case did not allege that they had been subjected to any invasion of their private parts, visual or otherwise.

A number of district judges within this circuit have analyzed searches in which arrestees are subjected to unwanted touching of their private parts under the case law that discusses strip searches. *See, e.g., Stewart v. Rouse*, 1999 WL 102774, at * 4 (N.D.Ill. Feb.22, 1999); *DuFour–Dowell v. Cogger*, 969 F.Supp. 1107, 1120 (N.D.Ill. 1997); *Doe*, 754 F.Supp. at 1214. As Judge Shadur has noted, "[d]eeply embedded in our culture ... is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed *or to have their 'private' parts* observed or *touched by others*." *Doe*, 754 F.Supp. at 1218 (emphasis added).

The search plaintiff describes went beyond the full search authorized by the Court in *Robinson*. Instead, the search alleged resembles one of the searches in *Doe* that Judge Shadur described as amounting to "offensive touching," in which a female officer lifted an arrestee's breasts and ran her fingers along the arrestee's genitals. *Id.* at 1214.

■ "Under *Robinson*, a full search is the maximum intensity of the search allowable to achieve that end [of discovering weapons or contraband] unless specific reasons exist that justify intensifying the search." *Mary Beth G.*, 723 F.2d at 1270. Defendants have offered no justification for the search other than that the department had a policy of searching any arres-

tee who would be spending time in the booking room, a secure area of the police department. As plaintiff notes, defendants do not suggest that Preikschat had specific suspicions that plaintiff was harboring contraband or weapons. Plaintiff was arrested for disorderly conduct, a patently minor infraction, for causing a ruckus in a restaurant on her lunch break. Defendant offers no specific reasons to justify touching plaintiff's private parts in an embarrassing and intrusive manner. The court concludes that even if the alleged search was conducted pursuant to a valid arrest, it was unreasonable as a matter of law.

■■■ Defendants argue that even if the search is unconstitutional, Preikschat is entitled to qualified immunity. Qualified immunity shields state actors from suits alleging liability for constitutional violations if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Seventh Circuit has established a two-part test for a ruling on qualified immunity: (1) whether the conduct sets out a constitutional violation; and (2) whether the constitutional standards were clearly established at the time of the violation. *Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir.1996). Liability under § 1983 also requires proof that a defendant was acting under color of state law and that the defendant's conduct violated the plaintiff's rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir.1994) (citations omitted); *see also Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994).

■■■ The court has determined that Preikschat's alleged conduct violated plaintiff's Fourth Amendment rights, and defendants do not dispute that she was act-

ing under color of state law when she searched plaintiff. Moreover, at the time Preikschat subjected plaintiff to the search, it was clearly established that *Robinson* allows nothing beyond a "full search," and that an officer must provide specific reasons to justify a more intrusive search. *See Mary Beth G*, 723 F.2d at 1270; *DuFour–Dowell*, 969 F.Supp. at 1121. It was likewise clearly established that custodial searches incident to arrest are subject to the Fourth Amendment's reasonableness inquiry. *See, e.g., Doe v. Burnham*, 1994 WL 330243, at *3 (N.D.Ill. July 1, 1994). As the court has discussed, the scope of the alleged intrusion of the instant search was extensive. The manner in which the search was conducted subjected plaintiff to unwanted touching of her private areas, and defendants have offered no justification for conducting such an invasive search beyond the city's policy of conducting pat-down searches of all arrestees who would be spending time in the booking room. The court therefore denies defendants' motion for summary judgment on qualified immunity grounds.

Although defendants claim that they do not dispute plaintiff's account of the facts surrounding the search, Preikschat states in her deposition that she conducted nothing more than a routine pat-down search, and did not place her hands underneath plaintiff's sweater or inside her pants. Because the material facts are in dispute, defendants' motion for summary judgment on plaintiff's unreasonable search claim is denied.

### 3. Negligence (Count IV)

■■■ The court refuses to assume supplemental jurisdiction over Count IV (alleging that Konidaris was negligent in preparing the salad) under 28 U.S.C. § 1367, because this claim is not so related that it forms part of the same case or controversy.[5] Federal and state law claims are part

5. Section 1367 reads: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that

are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

of the "same case or controversy" only if they derive from a "common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Count IV does not arise out of same set of facts as the other claims. Although plaintiff's allegation that Konidaris's negligence caused her to chip a tooth on a foreign object in her salad may have set the wheels in motion, her subsequent arrest for disorderly conduct arose out of a confrontation that occurred after this incident and derives from a completely different set of facts.

### 4. False Arrest (Count V)

Defendant Konidaris requests summary judgment on plaintiff's state law false arrest claim. The court assumes supplemental jurisdiction over Count V because plaintiff's false arrest claim, unlike her negligence claim, arises out of the same nucleus of operative fact as plaintiff's federal claims.

■■■■ Under Illinois law, "[a]n arrest by an officer caused or procured by a private person is the same as an arrest by the private person." *Dutton v. Roo–Mac, Inc.,* 100 Ill.App.3d 116, 119, 55 Ill.Dec. 458, 426 N.E.2d 604 (1981); *see also Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 618 (7th Cir.1989). "The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 151 Ill.Dec. 560, 564 N.E.2d 1222, 1231 (1990).

■■■■ The court therefore must address two issues: (1) whether Konidaris restrained or arrested plaintiff; and (2) whether Konidaris had reasonable grounds to believe that plaintiff had committed an offense. With respect to the first factor, defendant insists that a private party will be liable for false arrest only if "the arresting officer . . . relied solely on the information given to him by the private party when making the arrest," citing *Vincent v. Williams,* 279 Ill.App.3d 1, 6, 216 Ill.Dec. 13, 664 N.E.2d 650 (1996). *Vincent* cited the appellate court's decision in *Dutton* for this proposition. *Dutton,* however, relies on a case in which the Seventh Circuit held: "In Illinois cases holding a private party guilty of false imprisonment, the defendant has either *directed an officer to arrest the plaintiff* or has procured the arrest by giving information which was the sole basis for the arrest." *Odorizzi v. A.O. Smith Corp.,* 452 F.2d 229, 231 (7th Cir. 1971) (emphasis added).

■■■■ The law in Illinois and in this circuit therefore holds that a defendant may be liable for false arrest, even if he is not the arresting officer's sole source of information, if he "go[es] beyond providing the information leading to the arrest and actually request[s] and obtain[s] the arrest." *Doe v. City of Chicago,* 39 F.Supp.2d 1106, 1114 (N.D.Ill.1999); *see also Middleton v. Kroger Co.,* 38 Ill.App.3d 295, 298, 347 N.E.2d 27 (1976) (noting that "[defendant's] employees did not at any time sign a complaint against the plaintiff, did not request the police officer to arrest the plaintiff, and did not detain the plaintiff."). According to Wrona's deposition testimony, Konidaris told Wrona that he wanted to sign complaints to have plaintiff arrested, and the officer replied that since he was not on the scene when the incident occurred, Konidaris would have to testify to the facts surrounding the incident in court, a condition to which Konidaris agreed. The court therefore finds that Konidaris effected plaintiff's arrest.

With respect to the second factor, whether Konidaris had reasonable grounds to request plaintiff's arrest, Illinois law provides that "[a]ny person may arrest another when he has reasonable grounds to believe that an offense *other than an ordinance violation* is being committed." ILCS 725 § 5/107–3; *see also Schroeder,* 875 F.2d at 619; *Dutton,* 100 Ill.App.3d at 120, 55 Ill.Dec. 458, 426 N.E.2d 604. According to the undisputed facts, officer

Wrona told Konidaris that he was arresting plaintiff for disorderly conduct pursuant to the City of Lockport ordinance. The court therefore denies defendant Konidaris's motion for summary judgment on plaintiff's false arrest claim.

### 5. Malicious Prosecution (Count VI)

 Konidaris asks the court to grant summary judgment for him on the malicious prosecution claim. To survive summary judgment on her malicious prosecution claim, plaintiff must show that there is a disputed issue of fact about one of the elements of the claim. The elements of malicious prosecution in Illinois are: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to plaintiff. *Swick v. Liautaud,* 169 Ill.2d 504, 215 Ill. Dec. 98, 662 N.E.2d 1238, 1242 (1996).

With respect to the third element, plaintiff has demonstrated a question of fact about whether "[the complaining witness] lacked probable cause at the time he authorized the [police officer] to sign the criminal complaint...." *Adams v. Sussman & Hertzberg, Ltd.,* 292 Ill.App.3d 30, 43, 225 Ill.Dec. 944, 684 N.E.2d 935 (1997). Wrona admits that he told Konidaris that "yelling and screaming inside a restaurant constituted disorderly conduct." Konidaris was therefore under the impression that "screaming and yelling" created probable cause to believe that plaintiff had violated the ordinance prohibiting disorderly conduct. Plaintiff argues, however, that she was not screaming and yelling. In support of this argument she presents the affidavit of Thomas Pierson, who attests that plaintiff was not screaming and yelling. Plaintiff has therefore created a question of fact about whether there was probable cause for Konidaris to believe that plaintiff had engaged in disorderly conduct (given the definition of this offense that Officer Wrona had provided to Konidaris). The court therefore denies defendant's motion for summary judgment on plaintiff's malicious prosecution claim.

### CONCLUSION

Defendant Lockport's motion for summary judgment on Count II is granted and that defendant is dismissed from the case. The court declines supplemental jurisdiction over Count IV and therefore denies as moot defendant Konidaris's motion for summary judgment on this count. The court denies defendant Preikschat's motion with respect to Count I, and denies Konidaris's motion with respect to Counts V and VI. This matter is set for a status report on October 28, 1999, at 9:00 a.m.