UNITED STATES of America

v.

Gregory McNEILL

No. CRIM. AMD 03–0033.

United States District Court,
D. Maryland.

March 21, 2006.

Bonnie S. Greenberg, Office of the United States Attorney, Thomas M. Dibiagio, Baltimore, MD, for United States of America.

## ORDER DENYING MOTION FOR RECONSIDERATION

DAVIS, District Judge.

Now pending is the Government's motion for reconsideration of the court's order granting defendant's motion to suppress evidence.[1] The motion is denied for the reasons stated within.

### I.

Defendant Gregory McNeill was arrested for "assault by threat" by a Baltimore City police officer following an argument with his ex-girlfriend in front of a Baltimore 7–Eleven on January 7, 2003. He was taken to a local police station and once at the station, after receiving *Miranda*

---

1. According to the official clerk's docket, the motion for reconsideration was never filed. In a letter to chambers dated July 5, 2005, the Government forwarded what it described as "one courtesy copy" of the motion for reconsideration. In fact, however, a recent examination of the "copy" suggests that what was forwarded to chambers may not have been a "copy" of the motion but the motion itself, inasmuch as the "copy" contained a "live" signature of the Government attorney on both the motion and the certificate of service. Un-der the local rules of this court, "any motion to reconsider any order issued by the Court *shall be filed with the Clerk* not later than 10 days after entry of the order." L.R. 105.10 (made applicable to criminal cases under L.R. 207) (emphasis added).

Under the circumstances here, the court will forward the motion to the clerk together with this Order, but offers no opinion as to whether the Government properly filed the motion. Rather, the court proceeds on the assumption, but not a finding, that it did.

warnings, McNeill confessed to two bank robberies, the offenses with which he is charged in the instant case. McNeill moved to suppress his statements to police, *inter alia*, as the fruits of an unlawful arrest effected in violation of the Fourth Amendment, as made applicable to the states by the Fourteenth Amendment. The court granted McNeill's motion to suppress for the reasons stated from the bench following a suppression hearing. In a "Motion for Reconsideration" based on "recently found Fourth Circuit cases," the Government argues that the court should reverse its ruling.

The parties have fully briefed their arguments, and the court has carefully considered the issues presented. As explained below, assuming this court has jurisdiction to examine the motion (*see supra* n. 1), the court shall deny the Government's motion for reconsideration.

## II.

The below facts are based on the account given by Officer Paul McMillan during the suppression hearing.

Around 5:00 p.m. on January 7, 2003, Tonya Malone called 911 to complain that she was being harassed by McNeill, who is her ex-boyfriend. Officer McMillan arrived at the 7–Eleven, located at 2701 W. Franklin Street in Baltimore, about five minutes after the call was placed. He located Malone and McNeill near a payphone outside the store. The two approached the officer at the same time, but right away he separated them by about ten feet. He then asked to hear Malone's story first. Malone told the officer that McNeill was harassing her and that she had obtained an *ex parte* protective order against him.[2] Upon hearing about the protective order, McNeill verbally inserted himself into the conversation between the other two, exclaiming, "You bitch, you dead, you know I'm going to get you." Officer McMillan could not see McNeill when McNeill made the statement because McMillan was facing Malone. Thus, he could not see whether McNeill's oral statement was accompanied by or punctuated with any acts or body movements. Nevertheless, the officer immediately arrested McNeill for "assault by threat."[3]

After he was arrested for "assault by threat," as a result of subsequent custodial interrogation, McNeill gave the police a statement in which he admitted that he had committed two bank robberies.[4] He was charged by indictment with those robberies and faced trial in this court.

At the hearing on the motion to suppress, the Government did not dispute the fact that the admissibility of McNeill's statements (and any evidence derived from the statements) hinged on the legality of McNeill's arrest. Thus, the Government offered two theories to support its assertion that the arrest was consistent with the Fourth Amendment (made applicable to the states by the Fourteenth Amendment). First, the Government argued that there was probable cause to arrest McNeill for

---

**2.** Malone claimed she had obtained the *ex parte* order but did not have it with her. Indeed, such an order was issued to Malone earlier that day, at 2:05 p.m., but the arresting officer could not confirm its existence.

**3.** As the court mentioned at the hearing, Officer McMillan can hardly be criticized for taking what he thought was appropriate action to protect Malone. Nevertheless, the court is called upon to apply settled constitutional doctrine to the undisputed facts in ruling on the motion to suppress.

**4.** McNeill also challenged the statements on Fifth Amendment grounds, but it was and is unnecessary for the court to determine those issues.

assault.[5] The court rejected that argument, both because there is no such crime in Maryland as "assault by threat," and, more fundamentally, because it was clear from the facts that McNeill did not have (and no reasonable officer could have concluded that he had) the imminent intention to batter Malone at the time he made the oral threat in the officer's presence, nor was there reason to believe that the threat put Malone in reasonable apprehension of such harm at that time. The Government does not contest that ruling in its motion for reconsideration.

Second, the Government argued that, even if the officer did not have probable cause to arrest McNeill for assault (or "assault by threat"), he had probable cause to arrest him for the misdemeanor statutory offense of harassment.[6] The court also rejected that argument—for the reason that, if any incident of harassment occurred, it occurred before the officer arrived at the scene in response to the 911 call, and therefore it did not occur in the officer's presence, as is required any time an officer makes a warrantless arrest for a misdemeanor. It is that conclusion of

law—that in order to make a warrantless misdemeanor arrest consonant with the Fourth and Fourteenth Amendments, the offense must occur in the officer's presence—that the Government now challenges.

### III.

The defendant puts forth two arguments in opposition to the Government's motion. First, the defendant argues that the Government is raising a new issue that is improperly raised in a motion to reconsider. Second, the defendant argues that, notwithstanding the authority offered by the Government, under binding Supreme Court and Fourth Circuit jurisprudence, a police officer can only make a warrantless misdemeanor arrest consonant with the Fourth Amendment if the crime is committed in the officer's presence. I will consider each issue in turn.

### A.

■ There are some instances in which a party waives an argument by raising it for the first time in a motion to reconsider,

---

**5.** "The crime of common law assault is an attempt by force to injure the person of another, and a battery is committed whenever the menaced violence of assault is done in the least degree .... Any attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another, that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention ... [I]t is not necessary that there should be a specific purpose to do a particular injury." *Williams v. State*, 4 Md. App. 643, 647–648, 244 A.2d 619, 622 (1968)(deletions in original; internal quotation and citation omitted).

At the time of the events giving rise to this case, the Maryland common law crime of assault had been abrogated by statute. *See*

Md.Code Ann., Crim. Law §§ 3–201 *et seq.* In any event, Officer McMillan apparently never actually filed any charges against McNeill after he arrested him.

**6.** The Maryland harassment statute reads, in pertinent part, as follows:

(a) A person may not follow a person in or about a public place or maliciously engage in a course of conduct that alarms or seriously annoys the other:
(1) with the intent to harass, alarm, or annoy the other;
(2) after receiving a reasonable warning or request to stop by or on behalf of the other; and
(3) without legal purpose ....
(c) A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 90 days or a fine not exceeding $500 or both.
Md.Code Ann., Crim. Law, § 3–803.

but this is not one of them. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the [original] motion." *Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir.1985) (internal quotation marks and citations omitted); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir.1999) (stating that issue raised in motion to reconsider is not preserved for appeal unless district court uses discretion to excuse untimeliness). *See also United States v. Foreman*, 369 F.3d 776, 797 n. 12 (4th Cir.2004) (Gregory, J., concurring in part and dissenting in part) (suggesting that the Government could not rely on new evidence to support the existence of "reasonable suspicion" in a motion to reconsider the grant of a motion to suppress).

In the instant case, the Government had already made the argument that Officer McMillan may have had probable cause to arrest McNeill for harassment. During the suppression hearing, the Government's attorney stated:

> I think the record is very clear that the officer's objective reason for arresting was that he believed he had probable cause to arrest for assault. But, as we cite in our memorandum, the Supreme Court has said time and again that as long as there is an objectively reasonable basis to arrest for some violation of the law, the fact that the officer calls someone by the wrong name or identifies the wrong crime doesn't make the arrest illegal. So, we're relying on probable cause for the crime of harassment in the alternative.

Tr. at 26.

■ Therefore, the Government is not raising a new issue or relying on new evidence in its motion for reconsideration. Rather, it is identifying what it thought was additional case law support of which the court was not aware. From the hearing transcript, it is apparent that the Government, the defendant and the court all proceeded on the implicit understanding that the officer had to have witnessed the commission of a misdemeanor in order to make a proper warrantless arrest. What the Government is trying to do in its motion to reconsider, therefore, is to "correct [a] manifest error of law." *Publishers Res., Inc.*, 762 F.2d at 561.

### B.

■ At the heart of the Government's argument remains the issue of whether an officer may effect a warrantless misdemeanor arrest if, even where he has probable cause to believe the crime has been committed by the arrestee, the crime does not occur in the officer's presence. The court concludes that, despite some contradictory case law in the Fourth Circuit, the officer may not.

In support of its argument to the contrary, the Government relies on *Street v. Surdyka*, 492 F.2d 368 (4th Cir.1974), which was cited, seemingly approvingly, by *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir.2004). In *Surdyka*, a case brought under 42 U.S.C. § 1983, the Court reasoned that, considering the shrinking disparity between misdemeanors and felonies, "[w]e do not think the fourth amendment should now be interpreted to prohibit warrantless arrests for misdemeanors committed outside an officer's presence." 492 F.2d at 372.

More persuasive, however, is the authority supporting the defendant's view that an officer must be present at the commission of a misdemeanor in order to make a

warrantless arrest therefor. In *United States v. Dickey–Bey,* 393 F.3d 449 (4th Cir.2004), the Court said just the opposite of what it said in *Surdyka.* "If the crime is a misdemeanor, however, it must be committed in the officer's presence." *Id.* at 453 n. 2 (citing *Atwater v. Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense *in his presence,* he may, without violating the Fourth Amendment, arrest the offender.") (emphasis added)). Adding even more clarity to the issue is *Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). In that case, Chief Justice Rehnquist wrote: "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Id.* at 370, 124 S.Ct. 795 (citing *Atwater* and *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)). *Pringle,* clearly, is the last word on this issue, and the court is constrained to follow it.[7]

Because Officer McMillan was not present at the time McNeill allegedly committed the alleged offense of harassment under Maryland law, a misdemeanor, *see supra* n. 6, he could not effect a warrantless arrest under the Fourth Amendment (as made applicable to the states by the Fourteenth Amendment), and, because the arrest violated the Fourth Amendment, the fruits of the arrest, including McNeill's statements regarding other crimes, were properly suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## IV.

For the reasons set forth, assuming the court has jurisdiction over the Government's motion for reconsideration, the motion is DENIED.

---

7. *Humphries* likewise cites heavily to *Pringle.* 372 F.3d at 657–60. As Judge Niemeyer is the author of both *Humphries* and the subsequent opinion in *Dickey–Bey,* it seems clear that *Humphries* is not to be read as a wholesale endorsement of the reasoning of *Surdyka.*