605 F.2d 1121
 CA 79-3695 Charles JACKSON, Lonnie Daniels, Johnny Jenkins,
Peter Pursley, Jean Simmons, Isaac Reams, Steve Bell,
Trotter Jordan, and Anthony Greene, on behalf of themselves
and all others similarly situated, the Black Students'
Union, an unincorporated association, Willie E. Phillips and
Phillip Frazier, Plaintiffs-Appellants,
v.
S. I. HAYAKAWA, former President of San Francisco State
College, Board of Trustees of the California State College
System, San Francisco State College, Donald Garrity, Vice
President for Academic Affairs at San Francisco State
College, Frank Dollard, Executive Vice President at San
Francisco State College, Donald Scobel, Administrative
Assistant at San Francisco State College, Edward Duerr,
Coordinator of Internal Affairs at San Francisco State
College, Orrin Deland, Business Manager at San Francisco
State College, William Harkness, Dean of Student Activities
at San Francisco State College, Bruce Angell, Activities
Advisor at San Francisco State College, and Paul Romberg,
current President of San Francisco State College,
Individually and in their official capacity, Defendants-Appellees.
 No. 77-2289.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 4, 1979.
 
 Jeffrey B. Neustadt, Lawrence L. Curtice (argued), San Francisco, Cal., for plaintiffs-appellants.
 Matthew P. Boyle, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before TRASK and ANDERSON, Circuit Judges, and WYATT,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 This civil rights case arose from the campus turmoil which occurred at San Francisco State College (now known as California State University, San Francisco) in late 1968 and early 1969. The district court granted summary judgment in favor of the defendant college officials. The plaintiffs (a former instructor and students at the college) appeal, raising questions involving the statute of limitations, res judicata, and the sufficiency of their pleadings. We affirm in part and reverse in part.
 
 BACKGROUND
 
 2
 In the fall of 1968 the Black Students' Union initiated a student-faculty strike at San Francisco State College (College). On January 23, 1969, there was a rally in the College's central campus area, which was conducted in contravention of a ban on such meetings which had been imposed earlier by S. I. Hayakawa, the then President of the College. After the rally had begun, one of the College officials attempted to have the crowd disperse. A San Francisco police officer then informed the crowd that the meeting was unlawful and ordered everyone to leave the area. After these warnings were ignored, the police arrested over four hundred people. All of those arrested were charged with violations of California Penal Code §§ 408 (unlawful assembly), 409 (failure to disperse), and 415 (disturbing the peace).
 
 
 3
 A number of suits were filed as a result of these arrests and the disciplinary proceedings which were conducted by the College.[1] In Carrillo v. Hayakawa, No. C-50808 (N.D.Cal. June 27, 1969), a declaratory judgment action was filed on behalf of all those arrested, challenging both the constitutionality of the state statutes under which everyone was arrested, and their application. A three-judge federal court rejected both arguments. There was no appeal. The district court held the statutes were not unconstitutional on their face and also were not enforced in bad faith so as to discourage plaintiffs from exercising their First Amendment rights. In Wong v. Hayakawa, No. 50983 (April 24, 1969), the disciplinary proceedings conducted by the College were challenged. The district court found that the arrested students were given notice and a sufficient hearing to meet procedural due process notice and hearing requirements. It found, however, that due process was violated in the limited instance where the decision to discipline was based solely upon a police report that did not show any evidence of misconduct on the part of the plaintiffs. The court then issued an affirmative injunction, ordering the University to expunge from plaintiffs' school records all reference to disciplinary action and to reinstate plaintiffs as students. The court also suggested that the same be done for all students who were disciplined solely on the basis of the police report. This court, on appeal, affirmed the order of the district court, Wong v. Hayakawa, 464 F.2d 1282 (9th Cir. 1972), Cert. denied, 409 U.S. 1130, 93 S.Ct. 938, 35 L.Ed.2d 263 (1973).
 
 
 4
 The present action was originally filed on March 21, 1972. The first complaint was filed by one former black student and two black student organizations. Amended complaints adding plaintiffs and new claims were subsequently filed. It was determined that the action might be maintained as a class action in respect of the second of the five claims, but not otherwise (Fed.R.Civ.P. 23(c)(1)). The court below granted summary judgment on all five claims of the Third Amended Complaint which had been filed on December 17, 1975.
 
 
 5
 The plaintiffs appeal from the adverse judgment on four of their claims. One claim involves the allegation that the mass arrests were unconstitutional. Another deals with a blacklist circulated at the College which barred all those arrested from employment. The third claim stems from the College disciplinary proceedings against those arrested. And the final claim on appeal involves allegations by black students who allegedly were not paid for work performed for the College. Since each claim implicates different issues, we address each separately.
 
 DISCUSSION
 Standard of Review
 
 6
 In reviewing the summary judgment granted by the court below, this court will affirm the judgment only when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The record and the inferences derived therefrom are reviewed in the light most favorable to the non-moving party. Great Western Bank & Trust v. Kotz, 532 F.2d 1252, 1254 (9th Cir. 1976); 10 Wright and A. Miller, Federal Practice and Procedure (West 1973), § 2716.
 
 Mass Arrests
 
 7
 This, the first claim, is based on the arrests of the people who attended the campus rally on January 23, 1969. Plaintiffs Greene and Simmons brought it as a class action on behalf of all those who were arrested at the rally. The essence of this claim is the allegation that the College officials, along with the San Francisco Police, engaged in a conspiracy to deprive the plaintiffs of their First Amendment rights by having them arrested. In turn, this is dependent upon the implicit assertion that the statutes under which the arrests were made (§§ 408, 409, and 415) were applied without good faith and for the purpose of depriving plaintiffs of their First Amendment rights.
 
 
 8
 The court below granted summary judgment on this claim finding that it was either barred by the statute of limitations or res judicata. Because we find ample grounds to support summary judgment based on principles of res judicata, we do not decide whether summary judgment was appropriate under the alternative ground of the statute of limitations.
 
 
 9
 In Carrillo v. Hayakawa, No. C-50808 (N.D.Cal., June 27, 1969), a three-judge federal court rejected a similar challenge to the validity of the mass arrests. The plaintiffs in Carrillo brought their suit on behalf of themselves and others similarly situated challenging the constitutionality of the January 23 arrests. The court found that the arrests under §§ 408, 409 and 415 were proper and had not been conducted in bad faith.[2]
 
 
 10
 Under the principles of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552, 559 n. 5 (1979); Hooker v. Klein, 573 F.2d 1360, 1367 (9th Cir. 1978), Cert. denied, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327. On appeal, the plaintiffs argue that Carrillo[3] did not involve either the same cause of action or the same parties.[4]
 
 
 11
 The plaintiffs concede that Carrillo presented and decided the issue of whether the California criminal statutes which were used in the mass arrests were applied unconstitutionally and in bad faith to discourage the First Amendment rights of free speech and assembly. Nonetheless, the plaintiffs contend that the question of whether the California criminal statutes "were unconstitutional as applied to the arrests in question" was not resolved in Carrillo. We are unable to perceive any meaningful distinction between the issue decided in Carrillo and the issue presented in the present case. The rights sought to be vindicated remain the same, the passage of years has not altered their character in any way. Both cases arose out of the mass arrests which occurred on January 23, 1969. Although damages are sought here, whereas declaratory relief was sought in Carrillo, the issues are identical. Cambist Films, Inc. v. Duggan, 475 F.2d 887, 890-891 (3d Cir. 1973) (Van Dusen, J., concurring). Both cases involved the question of whether the defendants had applied the California criminal statutes in bad faith in violation of the constitutional rights of those arrested.[5]
 
 
 12
 Plaintiffs argue that the parties to the Carrillo suit are not the same as those involved in the present case. They claim that Carrillo involved different plaintiffs.[6] Although the named plaintiffs may have been different, we otherwise disagree with this contention. Initially, courts are no longer bound by rigid definitions of the parties or their privies for the purposes of applying collateral estoppel or res judicata. See Montana v. United States, 440 U.S. 147, 155-158, 99 S.Ct. 970, 975-976, 59 L.Ed.2d 210, 216-218 (1979); and Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1383-1384 (9th Cir. 1978). Carrillo was brought on behalf of all those who were arrested on January 23 at the College. It was brought as a class action and treated by the court as a class action.[7] Virtually all of those arrested were represented by counsel in the Carrillo case.[8] The plaintiffs fail to raise any other arguments as to why this claim should not be barred by res judicata. See Montana, supra, 440 U.S. at 162-164, 99 S.Ct. at 978-979, 59 L.Ed.2d at 222-223.
 
 
 13
 Based on the principles of res judicata, we conclude that summary judgment was properly entered on plaintiffs' first claim.[9]
 
 The Blacklist
 
 14
 The second claim for relief is based on the blacklist. Hayakawa had a list of all those who had been arrested prepared and circulated throughout the College. In an attached cover letter, signed by Hayakawa, it was explained that anyone whose name appeared on the list would thereafter be ineligible for employment at San Francisco State.
 
 
 15
 This claim was brought on behalf of all those whose names had appeared on the blacklist and who had been denied employment as a consequence of such listing. Only one named plaintiff, Peter Pursley, was found to have standing. Pursley was employed as a psychology instructor in the fall of 1968, but was not rehired for the following semester. Pursley did not become a plaintiff until December 1975.
 
 
 16
 The court below found that Pursley's claim was barred by the statute of limitations since he was notified that his employment was terminated on March 12, 1969, and the present action was not filed until March 21, 1972.
 
 
 17
 Since § 1983 does not contain its own statute of limitations, federal courts look to the state statute of limitations which applies to the most similar state cause of action. Bradshaw v. Zoological Society of San Diego,569 F.2d 1066, 1068 (9th Cir. 1978); Briley v. State of California, 564 F.2d 849, 854 (9th Cir. 1977). When a § 1983 cause of action is brought in California, § 338(1) of the California Code of Civil Procedure applies. Bradshaw, supra, 569 F.2d at 1068; Briley, supra, 564 F.2d at 854. This provides for a three-year limitation period.
 
 
 18
 Pursley received notice of the termination of his employment on March 12, 1969, and the present action was filed on March 21, 1972. At first glance it appears that his action is time barred. However, Pursley's department chairman filed an administrative grievance on Pursley's behalf in an attempt to have him reinstated. The final disposition of this informal proceeding did not occur until August 12, 1969. Plaintiffs argue that this administrative procedure tolled the statute so that the period ran until August 12, 1972.
 
 
 19
 Although federal courts borrow state statutes of limitations in § 1983 actions, there is some confusion as to whether state or federal law determines when the claim accrues and whether the statute is tolled. Bradshaw, supra, 569 F.2d at 1068; and Compare Briley, supra, 564 F.2d at 854-855, With Johnson v. Railway Express Agency, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), and Williams v. Walsh, 558 F.2d 667 (2d Cir. 1977). We need not address this question because the result reached here would be the same under either California or federal law.
 
 
 20
 Under California law, there is no statute which would toll the limitations period in this case. Therefore, plaintiffs must rely upon the doctrine of equitable tolling which has been developed by the California courts. See Addison v. State, 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941 (1978); Elkins v. Derby, 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81 (1974); and Bollinger v. National Fire Ins. Co., 25 Cal.2d 399, 154 P.2d 399 (1944). The doctrine's requirements are: "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." Addison, supra, 146 Cal.Rptr. at 227, 578 P.2d at 943-944. We do not need to look any further than the doctrine's first requirement. The pursuit of an informal administrative review seeking reinstatement, brought by someone other than the plaintiff, does not serve as timely notice that the plaintiff will bring a damage action under § 1983, particularly where, as here, the plaintiff does not formally enter the § 1983 action until six years after his employment was terminated. We are aware of no California decision granting relief from the limitations period in similar circumstances.
 
 
 21
 Plaintiffs cite no federal cases which would support a finding that the statute was tolled in the present case. The Supreme Court held that the filing of a Title VII employment discrimination charge with the Equal Employment Opportunity Commission did not toll the limitations period for filing a § 1981 action based on the same facts. Johnson, supra, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295. In Bireline v. Seagondollar, 567 F.2d 260 (4th Cir. 1977), Petition for cert. filed, 48 U.S.L.W. 3047 (1979), the Fourth Circuit, apparently applying federal law, refused to toll the statute of limitations in an almost identical factual situation. After being notified that she would not be rehired, a university instructor personally pursued her administrative remedies in Bireline. She was denied relief and then brought the § 1983 action which was found time barred despite the administrative proceedings.[10]
 
 
 22
 If any claim supports the use of the statute of limitations, the present one does. The plaintiffs initially slept on any rights they had until after the three-year statute of limitations had run. Pursley, the only plaintiff entitled to relief under this claim, was not brought into the suit until another three years later (six years after his claim accrued). And it is now ten years after the facts giving rise to the claim occurred.
 
 
 23
 Pursley himself had no administrative remedies. After he received notice of his termination, the only avenue open to him personally was the courts. The administrative procedure involved here was informal. It was brought not by Pursley but by his department chairman. We are not dealing with a case where the plaintiff pursued an administrative remedy afforded by statute. As the Supreme Court has observed:
 
 
 24
 "Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."
 
 
 25
 Johnson, supra, 421 U.S. at 463-464, 95 S.Ct. at 1722. We believe that any "merit" to the plaintiff's claim is sufficiently outweighed by the competing policy interest of protecting defendants from stale claims.
 
 
 26
 Thus we conclude that Pursley's claim was time barred whether state or federal tolling law is applied.
 
 
 27
 Plaintiffs argue that even if Pursley's claim is time barred, the second claim was still improperly dismissed. Relying upon Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), and East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), they reason that the claims of class members are not mooted or destroyed merely because the claim of the named plaintiff is denied. Those cases are clearly distinguishable. Both Franks, supra, and East Texas Motor Freight, supra, involved the mootness question under the "case or controversy" requirement of Article III. With the mootness issue the Court was concerned with the problem which arises because of the changes occurring to the plaintiff's position in the litigation. The plaintiff had initially stated a good cause of action but, because of the passage of time, may no longer need the remedy sought as there may no longer be a remedy available. With the statute of limitations we are concerned with the problems which arise because of the plaintiff's delay in bringing suit initially, not changes occurring after suit is filed.
 
 
 28
 Due to the infirmity caused by the running of the statute of limitations, the court below properly entered summary judgment on the plaintiffs' claim based on the blacklist.
 
 Disciplinary Proceedings
 
 29
 This, the third claim, is based upon the disciplinary proceedings brought by the College against those arrested at the January 23 demonstration. In their complaint, the plaintiffs alleged that their due process rights were violated because of the method used to select members of the faculty hearing panels, the failure to adequately separate the adjudicatory and prosecutorial roles, Hayakawa's bias, and inadequate notice of the charges against them. The court below granted summary judgment, finding that plaintiffs' claims were barred by the prior suit of Wong v. Hayakawa, No. C-50983 (N.D.Cal.), where other students had challenged these same disciplinary proceedings.
 
 
 30
 Plaintiffs have conceded that Wong controls the specific due process violations which they had claimed in their complaint. Nevertheless, they contend that they should enjoy the benefits as well as the burdens of the application of res judicata. While Wong found that minimum due process requirements had been satisfied by the disciplinary proceedings, that case also held that there was a due process violation in those cases where students had been disciplined based solely upon a police report that did not provide sufficient evidence to sustain a finding of misconduct. We agree with plaintiffs and believe that res judicata principles entitle them to affirmatively rely upon the limited due process holding of Wong.
 
 
 31
 While acknowledging their failure to raise this properly in their pleadings, plaintiffs contend that since they raised it in their motion for summary judgment, they should have been allowed to incorporate it by amendment under Fed.R.Civ.P. 15(b).
 
 
 32
 We agree with the plaintiffs.[11] While we do not condone the type of inartful pleading which occurred here, we believe that the principles of res judicata and the interests in prior judgments are of more importance than the pleading rules in the present case.[12]
 
 Funding of the Black Students Union
 
 33
 Appellants' fifth claim is brought by various individual plaintiffs employed by the Black Students Union (BSU), who allege that the BSU received inadequate funds to pay their salaries because of the BSU's involvement in the campus disorders. Appellants do not challenge the following findings which were made by the district court:
 
 
 34
 1) The demands for money by various student groups exceeded available funds;
 
 
 35
 2) The BSU, along with other minority groups, did receive funds; and
 
 
 36
 3) The BSU received much more than most groups, and in fact received a disproportionately large share of the available funds.
 
 
 37
 C.R. 447. Consequently, we must also agree with the conclusion that:
 
 
 38
 " . . . there is no evidence that the BSU, which received proportionately more funding than it would be entitled to, was subject to discrimination in budgeting, regardless of what its 'expectations' might have been and what promises might have been made."
 
 
 39
 C.R. 447. Summary judgment was properly entered on appellants' fifth claim for relief.
 
 
 40
 The district court's summary judgment is AFFIRMED on the mass arrest (first), blacklist (second), and failure to pay the black students' (fifth) claims. The summary judgment is REVERSED on the disciplinary proceeding (third) claim.
 
 
 
 *
 The Honorable Inzer B. Wyatt, Senior United States District Judge, Southern District of New York, sitting by designation
 
 
 [1]
 In addition to the two federal cases discussed in the text, the California Supreme Court overturned the criminal convictions of some of the students who were arrested. In re Brown, 9 Cal.3d 612, 108 Cal.Rptr. 465, 510 P.2d 1017 (Cal.1973), Cert. denied, 416 U.S. 950, 94 S.Ct. 1959, 40 L.Ed.2d 300 (1974). The court granted the petitioners' writ of habeas corpus finding that there had been erroneous jury instructions under § 415, and that there was no substantial evidence to support convictions under §§ 407 and 408
 
 
 [2]
 The relevant part of the Carrillo decision provides as follows:
 "As noted earlier, plaintiffs also move for a declaratory judgment that §§ 408, 409 and 415 have been applied without just cause for the purpose and with the effect of discouraging the exercise of free speech and assembly. There is no evidence in the record plainly establishing abusive invocation of the state criminal laws for such purposes. Although some plaintiffs have submitted affidavits making such allegations and claiming a "chilling" of their First Amendment rights, those declarations have been controverted by the defendants. The record is insufficient to warrant the granting of such relief."
 Carrillo, supra, at 9-10.
 
 
 [3]
 Plaintiffs also argue that the Carrillo decision was not decided "on the merits" since the court there had relied upon affidavits in denying the requested declaratory relief. No authority is cited nor are we aware of any which would support this contention. Summary judgment may be decided on the basis of affidavits; nonetheless it still is a judgment on the merits
 
 
 [4]
 Plaintiffs' arguments against the application of res judicata remind us of the following observation made by the late Judge Lemmon of this court:
 " 'Because there must be an end to litigation, the legal principle of res judicata is a salutary one and should be freely applied,' says the successful litigant.
 " 'Yes, but ', replies his adversary, 'yes, but Our case is different. As to Us, res judicata should not be invoked because,' etc."
 Robison v. Sidebotham, 243 F.2d 16, 17 (9th Cir. 1957), Cert. denied, 355 U.S. 867, 78 S.Ct. 115, 2 L.Ed.2d 74.
 
 
 [5]
 The Fifth Circuit uses the following test for determining whether the substance of two different motions is the same for res judicata purposes:
 "Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence sustain both judgments?"
 Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 961-962 (5th Cir. 1968). Application of this test to the present case would yield the same result as we reach.
 
 
 [6]
 Plaintiffs also claim that the defendants are not the same. The present suit is brought against Hayakawa and other officials of the College. Carrillo was against Hayakawa, the San Francisco Chief of Police, and District Attorney, and their agents and employees. The deletion of some defendants from the prior suit, where their interests and involvement were sufficiently similar to that of the defendants named in both suits, and where the rights sought to be vindicated remain the same, cannot serve as a bar to the application of res judicata
 
 
 [7]
 Since Carrillo was never certified as a class action, plaintiffs argue that it should not be considered in that light. In view of the considerations set forth in the text, we believe that this would elevate form over substance, which we decline to do in this case
 
 
 [8]
 The district court found that virtually all of those arrested were represented by counsel or had their interests represented by the public defender who was representing 400 of those who had been arrested. Plaintiffs do not challenge this
 
 
 [9]
 Plaintiffs in the present case are in less of a position to complain than some parties who have been bound by the doctrine of virtual representation. The Fifth Circuit explained this as follows:
 "Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative."
 Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir. 1975), Cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (and see the exhaustive list of cases cited therein where this has been applied).
 
 
 [10]
 The court reasoned as follows:
 "While plaintiff was granted an administrative hearing after May 19, 1970, and it may have been appropriate for her to have delayed filing her complaint until after its conclusion, the pendency of the administrative reconsideration did not extinguish her legal right to proceed in court or suspend it. The fact that she was unsuccessful in the administrative reconsideration did not create a new cause of action; it only made it apparent that if she were to obtain relief it could only come as a result of a successful lawsuit commenced within three years following May 19, 1970."
 Bireline, supra, 567 F.2d at 263.
 
 
 [11]
 Defendants raise two additional arguments in support of summary judgment in their favor
 First, they claim that the representative plaintiffs were not disciplined by the College and so lacked standing to bring this suit. Plaintiffs controvert this and claim that the named plaintiffs were either placed on probation or reprimanded. We believe that this sufficiently states a "distinct and palpable" injury so as to confer standing. Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Since a dispute exists as to whether the plaintiffs were disciplined, summary judgment cannot be based on this ground.
 And second, defendants claim the plaintiffs cannot show that the College officials conducted the disciplinary proceedings in bad faith which is necessary to support a § 1983 claim. Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). We note that neither Wong nor the court below addressed this specific issue, and so summary judgment cannot be upheld on this basis.
 
 
 [12]
 We believe this result is consistent with the underlying purposes of res judicata which rest "upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)