Vacated by Supreme Court, June 23, 2008

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

LAVONNA EDDY; VERNON EDDY;
KATHY LANDER; MARK LANDER,
　　　　　*Plaintiffs-Appellants,*

　　　　and

ANN EDDY,
　　　　　　　　*Plaintiff,*

　　　　v.

WAFFLE HOUSE, INCORPORATED,
　　　　　*Defendant-Appellee.*

No. 04-2505

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-03-2183-2-18)

Argued: September 21, 2005

Decided: April 6, 2007

Before WIDENER, NIEMEYER, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge Widener wrote the opinion, in which Judge Niemeyer concurred. Judge Michael wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Mary Elizabeth Kohart, DRINKER, BIDDLE & REATH, Philadelphia, Pennsylvania, for Appellants. Nancy Elizabeth Rafuse,

ASHE, RAFUSE & HILL, L.L.P., Atlanta, Georgia, for Appellee.
**ON BRIEF:** Gerald S. Hartman, DRINKER, BIDDLE & REATH,
L.L.P., Washington, D.C., for Appellants. William B. Hill, Jr., Sandra
Kim, ASHE, RAFUSE & HILL, L.L.P., Atlanta, Georgia, for Appel-
lee.

---

**OPINION**

WIDENER, Circuit Judge:

This case is an appeal from the final judgment of the U.S. District
Court of the District of South Carolina. The plaintiffs, an extended
black family, stopped to eat at a Waffle House restaurant in Walter-
boro, South Carolina. There, one of the plaintiffs, Mark Lander, alleg-
edly was told that the restaurant didn't serve black people.[1] He then
collected his family, who had not heard the remark, and left the res-
taurant.

All the family members then filed this lawsuit, alleging a violation
of 42 U.S.C. § 1981, and § 2000a.[2] Additionally, the plaintiffs alleged
violations of South Carolina state law, specifically, S.C. Code Ann.
§ 45-9-10 and § 45-9-30. After the close of discovery, the defendant
moved for summary judgment on all claims. The district court granted
the defendant's motion with respect to all family members save Mark
Lander, the only individual who allegedly heard the derogatory
remark. Mr. Lander's case then proceeded to jury trial which ended
with the defendant's verdict. This appeal followed. We have jurisdic-
tion under 28 U.S.C. § 1291. For the reasons following, we affirm.

I.

On July 6, 2000, the plaintiffs, Mark and Kathy Lander, a married
couple, Vernon and Ann Eddy, a married couple,[3] and Miss Lavonna

---

[1] The actual comment allegedly was "We don't serve niggers here."

[2] Ann Eddy died during the pendency of the litigation. Her claim is not
being pursued.

[3] Mrs. Eddy is Mrs. Lander's aunt.

Eddy, a female and granddaughter of Mr. and Mrs. Eddy stopped for lunch at the Walterboro Waffle House in South Carolina.[4] As Mr. Lander walked towards a booth, he allegedly heard a waitress utter the inflammatory remark. Mr. Lander, understandably upset at what he perceived to have occurred, communicated the comment to the rest of the group and decided, together with the Eddys, to leave the restaurant.

On July 2, 2003, the Landers and the Eddys commenced the present action. The district court granted summary judgment to defendant with respect to claims of the Eddys and Mrs. Lander. The court reasoned that since neither the Eddys nor Mrs. Lander heard the remark allegedly uttered by one of the waitresses,[5] they were not denied service. Employing the same reasoning throughout, the court granted summary judgment to the defendant on both federal and state law claims of the Eddys and Mrs. Lander. The court denied defendant's motion for summary judgment with respect to Mr. Lander, and that case proceeded to a jury trial which ended in the verdict for the defendant.

At trial the following events questioned in this appeal are alleged to have occurred. First, during his opening statement, the defense counsel said "Mark Lander will tell you that . . . he heard the statement, *they* don't serve niggers here." (emphasis added). Second, during the closing argument, the defense counsel made a visual presentation to the jury wherein he compared the stacks of depositions obtained by the plaintiffs to that obtained by the defendant. The argument goes that despite the significantly greater number of pages collected by the plaintiffs he still failed to prove his case. According to the plaintiffs, however, the defense counsel improperly manipulated the stacks by using condensed transcripts in Waffle House's stack and adding extraneous materials into Mr. Lander's stack. Third, during the

---

[4]The Eddys and Mr. Lander entered the restaurant together, while Mrs. Lander briefly stayed behind, but was intending to join the rest of the party shortly.

[5]It is undisputed that the only direct, acknowledged communication between the Eddys and a Waffle House employee was a waitress' inquiry into how she might serve them: "May I help you?" As stated previously, Mrs. Lander was not inside the restaurant at the time. See *ante* n.4.

closing argument, defense counsel stated that based on his own observations during trial, it was clear that Mr. Lander did not even recognize the waitress who allegedly made the racist remark when the waitress walked into the courtroom and gave testimony. Fifth, and finally, in the course of the trial, the district court excluded evidence of other similar complaints against Waffle House as irrelevant.

In the present appeal, the plaintiffs contend that the district court erred when it granted summary judgment with respect to the Eddys' and Mrs. Lander's claims against the defendant. The plaintiffs further contend that the district court abused its discretion in making the following rulings: 1) not granting a mistrial or issuing a curative instruction in response to the defendant's counsel's opening statement; 2) not granting a curative instruction in response to the defendant's counsel's closing argument; 3) excluding certain evidence from trial.

We address each of the plaintiffs' contentions in turn.

## II.

We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). We review the district court's decisions on such evidentiary matters of relevance for abuse of discretion. *Bright v. Coastal Lumber Co.*, 962 F.2d 365, 371 (4th Cir. 1992). Similarly, we review for abuse of discretion the district court's decisions on grant or denial of a mistrial or a curative instruction in response to counsel's opening statements and closing argument. See *Bright*, 962 F.2d 365, 370 (4th Cir. 1992).

## III.

We are of opinion that the district court erred in granting summary judgment to the defendant on the claims of Mrs. Lander and those of the Eddys. The district court erred in concluding that the Eddys and Mrs. Lander were not denied service simply because they were outside the earshot of the alleged racist remark.

## A.

For the purposes of this discussion, we assume, as we must, that the remark was actually uttered, was heard by Mr. Lander, and was

related by him to the rest of his group. See *Francis*, *supra*, 452 F.3d at 302. Under these facts, we must conclude that the Eddys and Mrs. Lander were denied service in no less a degree than Mr. Lander who actually heard the remark.

"To prove a § 1981 claim, [ ] a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. Aug. 9, 2006). Certainly if the defendant's employee uttered the phrase she is alleged to have uttered (as we must assume) that is *prima facie* evidence of intent to discriminate on the basis of race. See *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001); *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000). We are therefore left with the question of whether "the discrimination interfered with a contractual interest." *Denny*, *supra*.

We agree with the Fifth Circuit that "dining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 360 (5th Cir. 2003). Certainly, a reasonable person would not expect to be served in an openly hostile environment. As we have said in *Spriggs*, *supra*, "no single act can more quickly . . . create an abusive environment than the use of an unambiguously racial epithet such as 'nigger' . . . ." 242 F.3d at 185. It is irrelevant whether the customer heard the epithet for himself or whether he came to know through somebody else that such language is being used. In either case, a reasonable person would feel it to be a hostile environment.

Furthermore, it should be noted that the Eddys and the Landers arrived in the restaurant as a family. One would certainly not expect anyone in the party to stay and feel welcome when other members of the same party have been subject to the racial epithets. By denying service to one member of the party, the defendant effectively denied service to the other members of the same party. Accordingly, the district court erred when it granted summary judgment to the defendant with respect to the § 1981 claims of Mrs. Lander and the Eddys. For the same reasons we also hold that it was error to grant summary

judgment to the defendant on § 2000a and South Carolina state law claims of Mrs. Lander and the Eddys.

## B.

That, however, is not the end of our inquiry. In view of our deciding here that summary judgment was erroneous, we must inquire whether failure to do so was prejudicial or was harmless error.

The defendant argues that even if the grant of summary judgment was in error, the error was harmless because the claims of Mrs. Lander and the Eddys are the same and based on identical facts as those of Mr. Lander, which were in turn fully tried to a jury. Thus, the argument goes, there is no need to allow a separate trial on the claims of Mrs. Lander and the Eddys, because all issues relevant to their claims have been heard and rejected by a jury. We agree and have considered almost exactly the same fact situation in *Street*, *infra*.

Generally,

> summary judgment can be affirmed on appeal only if the evidence available to the trial judge at the time he ruled on the motion established that there was no genuine issue of material fact. This case is extraordinary, however, in that the facts material to the [defendant's] liability were fully developed in the subsequent trial against Officer Surdyka.

*Street v. Surdyka*, 492 F.2d 368, 374-75 (4th Cir. 1974). In the case at bar, whatever facts may have been in dispute were resolved in the subsequent jury trial which absolved the defendant. In the ordinary situation, we apply the doctrine of collateral estoppel to bar relitigation of an issue that has already been judicially decided. See *Sedlack v. Braswell Servs. Group*, 134 F.3d 219, 224 (4th Cir. 1998).

For collateral estoppel to apply, the proponent must establish that (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment

must be final and valid; and (5) the party against whom preclusion is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. *Sedlack*, 134 F.3d at 224. It is clear that criteria (1)-(4) are satisfied in this case. Certainly, whether or not the racist statement was actually made was central to the resolution of Mr. Lander's claim and is the very issue that would be litigated by Mrs. Lander and the Eddys. The only question is whether Mrs. Lander and the Eddys "had a full and fair opportunity to litigate the issue."

The *Street* case is persuasive, even if not controlling. It is on almost the same facts as the present case. There, Street sued an officer and two police cadets, under 42 U.S.C. § 1983, for making an allegedly unlawful arrest. We reasoned that the district court erred if its granting of summary judgment to the cadets was because it reasoned that they were not acting under color of law. *Street*, 374 F.2d at 374-376 and n.10. The case proceeded to trial against the remaining officer and the jury returned a verdict absolving the officer of liability. On appeal we held that although it would have been a legal error for the district court to have granted summary judgment on the claim against the cadets, "the uncontroverted evidence in the record at the time of entry of summary judgment, *as embellished and explained by Street's [the plaintiffs'] subsequent testimony*, convinces us that Street is not entitled to recovery and that a remand for trial against the cadets would be to no avail." *Street*, 492 F.2d at 375 (emphasis added). This court affirmed the judgment of the district court.

The same logic holds with equal force in the present case. The evidence in the record at the time of summary judgment "as embellished and explained" by subsequent trial testimony, convinces us that a remand for trial on the Eddys' and Mrs. Lander's claim "would be to no avail."

In reaching this conclusion, we are in agreement with the Ninth Circuit. In *Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir. 1979), the Ninth Circuit faced a similar situation as that present here. In *Jackson*, 400 students were arrested during a demonstration. Some of the arrestees later filed suits seeking declaratory judgment challenging several state statutes. A three-judge district court in *Carrillo v. Hayakawa*, No. C—50808 (N.D. Cal., June 27, 1969), rejected the students' claims. Subsequently, a different group of students, not

party to the original action filed a new lawsuit. The district court held, and the Ninth Circuit affirmed, that the new complaint is barred by res judicata. In its opinion the court stated:

> The rights sought to be vindicated remain the same, the passage of years has not altered their character in any way. Both cases arose out of the mass arrests which occurred on January 23, 1969.

***

> Plaintiffs argue that the parties to the *Carillo* suit are not the same as those involved in the present case. They claim that *Carillo* involved different plaintiffs. Although the named plaintiffs may have been different, we otherwise disagree with this contention. Initially, courts are no longer bound by rigid definitions of the parties or their privies for the purposes of applying collateral estoppel or res judicata. Carrillo was brought on behalf of all those who were arrested on January 23 at the College. It was brought as a class action and treated by the court as a class action. Virtually all of those arrested were represented by counsel in the Carrillo case. The plaintiffs fail to raise any other arguments as to why this claim should not be barred by res judicata.

*Jackson*, 605 F.2d at 1125-26 (internal citations and footnotes omitted).

The present facts are similar to the ones in *Jackson*. The "rights sought to be vindicated" by the Eddys and Mrs. Lander are the same as those of Mr. Lander. Both cases arose out of the same incident. All plaintiffs were represented by the same attorney. On these facts, we agree with the Ninth Circuit that the claims of the Eddys and Mrs. Lander should be barred.

As the jury deemed Mr. Lander's evidence, including his own testimony, to be insufficient for him to prevail, it necessarily follows that the same evidence would be insufficient for Mrs. Lander and the Eddys to prevail.

As a result, Mrs. Lander's and the Eddys' legal claims must fail with those of Mr. Lander. Because, as explained below, we find that there was no error at Mr. Lander's trial, we affirm the judgment of the district court as to Mrs. Lander and the Eddys.

IV.

Mr. Lander argues on appeal that the district court committed errors when it refused to issue a curative instruction or declare a mistrial in response to defense counsel's statements during the opening statement and closing argument. We are of opinion the argument is without merit.

According to Mr. Lander, defense counsel's statement during his opening statement that "Mark Lander will tell you that . . . he heard the statement, *they* don't serve niggers here," when Mr. Lander actually heard the phrase "*we* don't serve niggers here," prejudiced and confused the jury (emphasis added). Mr. Lander argues that defense counsel led the jury to believe that the statement, being in third person plural, was made by a customer as opposed to having been made by an employee who would have used first person plural. Even if we were inclined to agree with Mr. Lander that counsel's statement was prejudicial and confusing, we cannot conclude that it was "so flagrant or inflammatory as to affect the fairness of the trial." *Bright*, 962 F.2d at 370. In light of that fact, we conclude that the district court did not abuse its discretion in denying a motion for a mistrial. Whatever prejudice may have resulted from defense counsel's opening statement (and we are far from convinced that there was any)[6] is negated by the court's proper instruction that "that counsel's statements were not evidence." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (internal quotations omitted). We therefore affirm the district

---

[6]We note that in his deposition, J.A. 207A, Mr. Lander himself several times used the third person plural. He now argues that he was simply using a correct grammatical construction in relaying what he heard, while always maintaining that the original phrase was in first person plural. Br. at 11, J.A. 1160-61A. However, that cuts both ways. The defense counsel also can be said to have used a "correct grammatical construction" when relaying what his clients were accused of saying.

court on this issue. The court could hardly have been more clear. Its instruction to the jury was:

> Certain things are not evidence and you may not consider them in deciding what the facts are. I'll list them for you now. Arguments and statements by the lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, closing arguments, and at other times, is intended to help you interpret the evidence, but it is not evidence.

> If the facts as y'all remember them differ from the way the lawyers have stated them, your memory then controls.

We affirm the district court as to the decision with respect to the opening statement.

Next, Mr. Lander argues that the district court failed to give curative instructions in response to defense counsel's supposedly misleading presentation of the volumes of depositions during the closing argument. Again, however, Mr. Lander fails to persuade us that the prejudice resulting from this supposed misrepresentation was "so flagrant or inflammatory as to affect the fairness of the trial." *Bright*, 962 F.2d at 370. We are consequently convinced that the district court did not abuse its discretion in not instructing the jury on its own motion, no objection having been made by the plaintiffs. Neither was there a motion for mistrial. Next, Mr. Lander argues that the defendant's counsel provided testimony in his closing statement by commenting on Mr. Lander's supposed reaction to the testimony of the waitress who was accused of making the racist remark. Again, we cannot conclude that this comment (even if improper) was "so flagrant or inflammatory as to affect the fairness of the trial," *Bright*, 962 F.2d at 370, especially in light of the proper jury instruction "that counsel's statements were not evidence." We do not find that the district court abused its discretion in not issuing a curative instruction and affirm it on this issue.[7]

---

[7]The assignment of error states:

THE COURT ABUSED ITS DISCRETION IN NOT GRANT-ING A MISTRIAL OR INSTRUCTING THE JURY TO DIS-

Finally, Mr. Lander argues that the district court abused its discretion in failing to admit evidence of other lawsuits and complaints against Waffle House. The plaintiffs recognize that this evidence would be hearsay and thus inadmissible if offered for the truth of the matter asserted. Instead, they argue that the evidence would be offered to prove that the defendant was "on notice" of the racist behavior of its employees. But the jury concluded that there was no actionable racist behavior toward Mr. Lander. However, even if we concluded that this evidence were relevant, we cannot conclude that the district court decision to preclude the evidence was "arbitrary and irrational." *Mohr*, 318 F.3d at 618. Aside from relevancy issues, the evidence was hearsay, and its exclusion was not an abuse of discre-

---

REGARD THE STATEMENTS AND ACTIONS OF DEFENSE COUNSEL IN HIS CLOSING ARGUMENT, WHICH CONFUSED AND MISLED THE JURY. Br. p.34

We have read each appendix and transcript reference in the brief to support this assignment of error: Br. pp.34-37; J.A. 1224A-1225A; 1096A; 1228A; 1227A; and 1144A. The facts disclosed in those references to the record do not support the assignment of error. Rather, the plaintiffs depend on uncomplimentary adjectives and adverbs, for example: "Defense counsel's testimony about evidence and matters not in the record," Br. p.34; "Counsel's demonstration was, at best, highly misleading and, at worst, intentionally false," Br. p.34; "This misleading and confusing characterization of the evidence," Br. p.35; and "His agenda of misleading the jury," Br. p.36.

Despite all of this conduct now complained of, the plaintiffs' attorneys did not move for a mistrial in the district court, contemporaneously or otherwise. No motion was made to set aside the verdict or to alter or amend the judgment, and plaintiffs apparently simply collected previously unspoken grievances with the trial court for the first time in their brief on appeal.

Along the same line, the special verdict form was not objected to and was "Did the plaintiff prove by the preponderance of the evidence each of the elements of his 1981 claim against the defendant?" The answer of the jury was "no." There was no objection to the court's jury instructions. Even now, there is no claim that the evidence does not support the verdict.

Proceeding in the manner just outlined above does not add weight to plaintiffs' argument.

tion. In short, we conclude that the district court did not abuse its discretion and affirm it on this issue.

## V.

For the foregoing reasons, we conclude that the district court erred in granting summary judgments to the defendant on the claims of Mrs. Lander and the Eddys. However, we conclude that the error was harmless because after a trial a jury rejected identical claims, based on the same set of facts, of the remaining family member, Mr. Lander. Because we find no error in the trial of Mr. Lander, we conclude that the claims of Mrs. Lander and the Eddys also fall.

The judgment of the district court is accordingly

*AFFIRMED.*

MICHAEL, Circuit Judge, dissenting:

As an African-American family group sought service at a Waffle House restaurant, one member of the family, Mark Lander, overheard an employee say, "[W]e don't serve niggers in here." This vile statement, which Mr. Lander immediately reported to the other family members, Kathy Lander, Vernon Eddy, Ann Eddy (now deceased), and Lavonna Eddy, provides the basis for racial discrimination claims by all of the family members, who were denied the opportunity to enjoy a meal at the restaurant. I therefore agree with the majority that the district court erred in granting summary judgment to Waffle House on the discrimination claims of Kathy Lander, Vernon Eddy, and Lavonna Eddy, none of whom actually heard the statement. I respectfully dissent, however, from the majority's conclusion that the error was harmless on the ground that the three dismissed family members would be collaterally estopped by the verdict returned against Mr. Lander at his trial. The three dismissed family members did not have a full and fair opportunity to litigate their claims. Mr. Lander could not adequately represent the interests of the other family members because the rights at stake are personal in nature, he was not accountable to his family members for the results of the litigation, and the district court did not explicitly or tacitly approve of Mr. Lander

as a representative of the dismissed family members at his trial. Because Mr. Lander did not represent the interests of the other family members, the collateral estoppel doctrine does not preclude their claims. Additionally, I respectfully dissent from the majority's determination that the district court did not abuse its discretion when it excluded evidence of prior complaints of racial discrimination made against Waffle House. Because of the error in failing to admit this evidence, Mr. Lander is entitled to a new trial.

I.

The facts bear repeating. On July 6, 2000, Mark Lander, his wife, Kathy Lander, Mrs. Lander's aunt and uncle, Ann and Vernon Eddy, and the Eddys' granddaughter, Lavonna Eddy, stopped at a Waffle House restaurant in Walterboro, South Carolina, intending to eat. Mrs. Lander stayed in the parking lot to finish an ice cream cone while the others went inside to find a table. Mr. Lander, upon entering the restaurant, heard an adult female voice say, "[W]e don't serve niggers in here." J.A. 189A, 202A. Mr. Lander looked in the direction of the voice and saw a young girl and two white, female Waffle House employees standing at the counter. He was certain that the statement came from one of the two employees. All of the other customers and staff members in the restaurant were white. Mr. Lander went to the booth where the Eddys had seated themselves and told them what he had heard. The family decided to leave and made no response when a waitress came over and asked, "May I help you?" J.A. 192A. Those departing met Mrs. Lander at the door, and Mr. Lander told her about the discriminatory statement. Mrs. Lander decided to call a customer complaints hotline listed on a poster in the restaurant's window. She called from inside the restaurant so the employees could hear her conversation. In response to Mrs. Lander's complaint, Waffle House sent the Landers and Eddys coupons for use at Waffle House restaurants. A Waffle House representative also spoke to the employees on duty at the time of the incident about Waffle House's nondiscrimination policy. The representative ultimately concluded that there was no evidence of discrimination.

In July 2003 the Eddys and Landers sued Waffle House for violations of 42 U.S.C. § 1981, Title II (42 U.S.C. § 2000a), and South Carolina law. The district court granted summary judgment against all

of the family members except Mr. Lander because only he had heard the statement. Mr. Lander's case went to trial, and the court excluded evidence of similar complaints of discrimination that had been made against Waffle House before the family's visit. The jury returned a verdict for Waffle House. Ann Eddy died while the lawsuit was pending, and her claims were dropped. The four other family members appeal.

## II.

I respectfully disagree with the majority's conclusion that the erroneous entry of summary judgment against three of the family members was harmless. Specifically, collateral estoppel does not bar their claims on the basis of Mr. Lander's unsuccessful trial. The doctrine of collateral estoppel promotes judicial economy and relieves parties of undue burdens by preventing the retrial of issues actually determined and necessarily decided in a prior proceeding where there was a full and fair opportunity to be heard. *Va. Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987). I recognize that the requirement of strict mutuality (or complete identity) of parties between suits has long been abandoned. Nevertheless, due process concerns require a court to exercise some caution in binding nonparties to determinations made in a prior proceeding. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971). "[A]s a general rule, nonparties will not have had a full and fair opportunity to litigate the issues raised in the previous action," unless the nonparties were in privity with a prior party. *See Va. Hosp. Ass'n*, 830 F.2d at 1312. In general, privity exists if the nonparty (1) controlled the original action, (2) is a successor-in-interest to a prior party, or (3) was adequately represented by a prior party. *Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005). In other words, preclusion will operate against a nonparty when he is "so identified in interest with a party to former litigation that [the nonparty] represents precisely the same legal right in respect to the subject matter involved." *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997) (quotation marks and citation omitted). The majority errs in concluding that Mr. Lander adequately represented the interests of Mrs. Lander and the Eddys.

Generally, representation is deemed adequate for preclusion purposes in only the narrowest of circumstances. In *Klugh v. United*

*States*, 818 F.2d 294 (4th Cir. 1987), this court held that adequate, or virtual, representation should not be used as a basis for precluding the claims of nonparties when (1) the interests of the parties and nonparties are separate; (2) the parties to the first action are not accountable to the nonparties; or (3) the court did not at least tacitly approve the virtual representation in the first action. *Id.* at 300. None of these factors is present here.

First, Mrs. Lander and the Eddys have interests in litigating their claims against Waffle House that are separate and distinct from the interest of Mr. Lander. Racial discrimination "is a fundamental injury to the *individual* rights of a person," and § 1981 guarantees "the *personal* right to engage in economically significant activity free from racially discriminatory interference." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661-62 (1987) (emphasis added). Similarly, the overriding purpose of Title II is "to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307-08 (1969) (quotation marks and citation omitted). The family members here may have suffered the same type of harm from the same source, but each member suffered his or her own humiliation from the discrimination. Thus, each had an interest in vindicating his or her own right to freedom from such discrimination under the law.

Second, applying collateral estoppel would be inappropriate because Mr. Lander has no express or implied legal relationship with the other family members that would make him accountable to them with respect to their claims. *See Klugh*, 818 F.2d at 300; *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir. 2003). Generally, a party is accountable to another party only when they share a legal relationship such as that between estate beneficiaries and administrators, parent corporations and their subsidiaries, and trust beneficiaries and trustees. *Pollard v. Cockrell*, 578 F.2d 1002, 1008-09 (5th Cir. 1978). Mr. Lander's familial ties to the dismissed parties did not impose on him any legal obligation to vindicate their interests at his trial. The absent family members may have had the same lawyers as Mr. Lander, but once the family members were eliminated from the suit through summary judgment, the lawyers were responsible for advocating solely on Mr. Lander's behalf. Neither Mr.

Lander nor the lawyers had any obligation to conduct his litigation in a manner favorable to the absent family members.

Finally, the district court did not exhibit any explicit or tacit approval of Mr. Lander's virtual representation of the other family members. Tacit approval may be found when the court knew of a relationship that gave a party authority to appear on behalf of a non-party. *See Martin*, 407 F.3d at 651-52. In this case, the district court could not have tacitly approved of Mr. Lander's representation of the absent family members' interests because it concluded that they had no interests to be represented (as shown by the summary judgment against them), and the court had no evidence before it of any relationship that would have made Mr. Lander legally accountable to his wife and other family members with respect to their claims.

The absent family members' separate interests and Mr. Lander's lack of accountability to them should have foreclosed any determination that Mr. Lander adequately represented their interests in his case. Accordingly, the district court's grant of summary judgment against them was not harmless. In concluding otherwise, the majority overlooks the test announced in *Klugh*. It relies instead on two cases that differ sharply from this one. Both of these cases involve plaintiffs who were *themselves* parties or class members in the litigation that precluded their claims. In *Street v. Surdyka*, 492 F.2d 368 (4th Cir. 1974), we affirmed a grant of summary judgment to nonparty defendants because the same plaintiff had already been unsuccessful in litigating the same claim on the same facts against another defendant. *Id.* at 374-375. Similarly, in *Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir. 1979), preclusion was invoked against plaintiffs who were members of a class whose representatives had previously litigated the same claim. *Id.* at 1126. In *Street* and *Jackson* there is no question that the plaintiffs had a full and fair opportunity to litigate, or to have a class representative litigate, all relevant issues of law and fact. The majority mistakenly concludes, however, that these cases support a determination of harmlessness here. But in direct contrast to the situation in *Street* and *Jackson*, Mrs. Lander and the Eddys never had an opportunity to litigate their claims either directly or through a legally accountable representative. Mrs. Lander and the Eddys were entitled to their own day in court. I would therefore reverse the district court's grant of summary judgment against them.

## III.

During his trial Mr. Lander sought to introduce evidence of other complaints of racial discrimination against Waffle House both before and after the July 2000 incident. The evidence took the form of news articles, legal pleadings, and testimony of Waffle House employees who had witnessed similar discrimination. The district court granted Waffle House's motion in limine to exclude the evidence. Again, I respectfully disagree with the majority and would hold that the district court abused its discretion by excluding evidence of pre-July 2000 complaints. This evidence was relevant non-hearsay, and its exclusion warrants a new trial.

The Federal Rules of Evidence instruct that "[a]ll relevant evidence is admissible, except as otherwise provided" by law or rule. Fed. R. Evid. 402. Relevant evidence is defined broadly as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A failure to admit relevant evidence without a legally supported reason constitutes an abuse of discretion and may require a new trial. *See Westfield Ins. Co. v. Harris*, 134 F.3d 608, 615 (4th Cir. 1998).

The district court did not clearly state its reasons for excluding the complaints evidence. It lumped the pre-July and post-July 2000 evidence together and deemed it all irrelevant because Waffle House's evidence of post-July 2000 training already had been excluded. While this may have provided a reason for excluding complaints based on post-July 2000 incidents, it does not explain why pre-July 2000 incidents are irrelevant. The majority fails to acknowledge this significant gap in the district court's reasoning.

The only explanation provided by the district court that covers the pre-July 2000 evidence is the conclusory statement that newspaper articles, which account for roughly one-fourth of the evidence, are generally unreliable. The court did not explain how this prevented the evidence from being used for the proposed non-hearsay purpose of showing that Waffle House had notice of the potential ineffectiveness of its anti-discrimination policies. The majority similarly ignores this

possible use of the complaints and concludes that they are inadmissible hearsay.

An out-of-court statement is not hearsay when it is "offered not for [its] truth but to prove the extent of . . . a recipient's notice of certain conditions." 5-801 *Weinstein's Federal Evidence* § 801.11[5][a]. Evidence of prior complaints is often admitted to show notice of an underlying problem that allegedly injured the plaintiff. *See Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1385-86 (4th Cir. 1995); *United States v. Chavis*, 772 F.2d 100, 105 (5th Cir. 1985); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 688-89 (11th Cir. 1984). Complaints prior to the July 2000 incident are relevant to show that Waffle House had notice of a potential discrimination problem in its restaurant chain and knew that its anti-discrimination policies may have been inadequate. This notice and knowledge is relevant to the issues of whether Waffle House is liable for the actions of its employee and whether it acted with sufficient intent or recklessness to warrant punitive damages.

The erroneous exclusion of the prior complaints deprived Mr. Lander of critical evidence of Waffle House's knowledge of ongoing discrimination and potential problems with its anti-discrimination policies at the time of the incident. Because the district court failed to differentiate between the relevance of the pre- and post-July 2000 complaints and failed to recognize the non-hearsay nature of this evidence, I would grant Mr. Lander a new trial to give a jury the opportunity to assess his claim in light of this additional evidence.